## Yazoo & M. V. R. R. Co. *v.* Houston.

[75 South. 690, Division B.]

Interstate Commerce. *Railroads. Injury to employe.*

A railroad laborer while engaged in loading sand and gravel on cars for the purpose of repairing the roadbed of an interstate railroad at divers points on said railroad, was not engaged in interstate commerce within the Employers' Liability Act. Act April 22, 1908, chapter 149, 35 Stat. U. S. Comp. St. 1916, sections 8657-8665.

Appeal from the circuit court of Quitman county. Hon. W. A. Alcorn, Judge.

Suit by Mrs. Lizzie Houston against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

The husband of the appellee was in the employ of the appellant railroad company as a day-laborer engaged in loading sand and gravel upon cars, which sand and gravel was to be used in the repair of appellant's lines of railroad at various points on its line, which extended from Memphis, Tenn., through the state of Mississippi, to New Orleans, La. The gravel, which was in a hill, was loosened by the explosion of dynamite, and would fall to the bottom of the embankment, and from that point was taken up by steam shovel and dumped into cars. At times the explosion of the dynamite was not sufficient to cause all of the gravel loosened to fall to the bottom of the bank, and it became necessary for the laborers to take long poles and dislodge it. While the appellee's husband was engaged in loosening gravel with a pole, a large quantity of it fell suddenly upon him, burying him and causing his death. This suit was brought by his widow to recover for his death. There was a judgment based upon the verdict of a jury for eight thousand dollars,

from which the railroad company prosecutes this appeal. The plea filed by the railroad company sets up the fact that the railroad company was engaged in interstate commerce, and that appellant's decedent at the time of his injury was employed in interstate commerce, in that he was engaged in the repair of appellant's interstate railroad, wherefore the liability of appellant, if any, was under the "Employers' Liability Act of Congress," and could only be enforced through a suit by the personal representative of the decedent, and that the widow had no right to maintain this action.

*Mayes, Wells, May & Sanders, Chas. N. Burch* and *H. D. Minor,* for appellant.

At the time of this accident, the defendant was engaged in interstate commerce and the plaintiff's husband, the deceased, was employed in such commerce. The right of action to recover for his death exists, therefore, alone under the Federal Employer's Liability Act. *Pedersen* v. *Delaware, etc., R. Co.,* 229 U. S. 146; *Tralich* v. *Chicago, etc., R. Co.,* 217 Fed. 677; *Zikos* v. *Railroad Co.,* 179 Fed. 893; *Southern Ry. Co.* v. *Mays* (C. C. A.), 239 Fed. 40; *Holmberg* v. *Lake Shore, etc., R. Co.,* 145 N. W. 504; *C. R. I. & P. R. Co.* v. *DeBoyd* (Tex.), 192 S. W. 766.

The decedent was employed to handle a steam shovel for the purpose of loading gravel onto cars to be immediately applied to the repair and improvement of defendant's main line of interstate railroad. At the moment of the injury he was poking down gravel so that the steam shovel might reach it and this was "a minor task which was essentially a part of the larger one;" the repairing and improvement of an interstate highway. *Pedersen* v. *Delaware, etc., R. Co.,* 229 U. S. 146.

As the case is within the Federal Employer's Liability. Act, the right of action for decedent's death, if any, can

be asserted only by decedent's personal representative. This is not a matter of form, but of substance. *American Railroad Co.* v. *Birch,* 224 U. S. 457; *Missouri, etc., R. Co.* v. *Wulf,* 226 U. S. 570.

The case being under the Federal Act, the defendant is not liable except for negligence and, in determining whether there was negligence, the common law as interpreted and applied in the federal courts must control. *Southern R. Co.* v. *Gray,* 241 U. S. 333; *Sea Board Air Line* v. *Horton,* 233 U. S. 492.

There was no negligence on the part of the defendant railroad company but the unfortunate death was due wholly to the carelessness of the decedent himself. *Infra,* pp. 2831. The decedent had been employed at this particular work for some time and in work of this character for two or three years. Several months before the accident he had been caught in a similar slide of gravel.

The situation at the time of the accident was perfectly apparent to him and he, therefore assumed the risk. Record, pp. 62, 192; *Sea Board Air Line* v. *Horton,* 233 U. S. 501; *C. R. I. & P. R. Co.* v. *DeBoyd* (Tex.), 192 S. W. 766; *Infra,* pp. 32-38.

Whether the case falls within the federal act or not, the plaintiff is not entitled to recover because her husband assumed the risk, for the doctrine of assumption of risk was in force in Mississippi at the time of this accident, February 24, 1914. *Railroad Co.* v. *Bowles,* 71 Miss. 1003; *Morehead* v. *Railroad Co.,* 84 Miss. 112; *Newman Lumber Co.* v. *Dantzler,* 107 Miss. 31; *Cumberland Tel. Co.* v. *Cosnahan,* 105 Miss. 615.

The Mississippi Act of 1914 (ch. 156) undertaking to abolish the doctrine of assumption of risk, was not passed until February 28, 1914, four days after the injury and death here complained of. That act had no retroactive effect. *Easten* v. *Van Dorn,* Walker 14; *Garrett* v. *Beaumont,* 24 Miss. 277; *Hughston* v. *Carroll County,* 68 Miss. 660; *Bramlett* v. *Wetlin,* 71 Miss. 902.

The trial court failed to give proper effect to the doctrine of assumption of risk for that he limited the assumption of risks not arising from the negligence of the defendant and instructed the jury in effect that the decedent did not assume any risks arising out of the negligence of the defendant.

The recognized rule is that an employee not only assumes risks ordinarily incident to his employment and not arising from negligence of the master but also assumes risks arising from negligence of the master where such risks were observed by him or were so obvious that any ordinarily prudent man would have observed them. *Seaboard Air Line* v. *Horton*, 233 U. S. 492; *Chicago, etc., R. Co.* v. *DeBord*, 192 S. W. 768.

*P. H. Lowrey*, for appellee.

The one question which lies at the root of this case is whether or not the deceased, S. S. Styres, was, at the time of his injury, engaged in interstate commerce within the meaning of the Federal Employers' Liability Act. If he was and if the liability is under this act, then the appellee, who was plaintiff below, is out of court.

It is unnecessary to discuss whether or not she has made a case of liability under that act for, if that act applies then we concede that the suit could not have been brought by her and that there can be no recovery.

On the other hand, we contend with all confidence that if this act does not apply, then the judgment of the lower court should be affirmed, as the case was clearly made out under the laws of the state of Mississippi.

This suit was brought soon after the decision by the United States supreme court in the case of *Pedersen* v. *Deleware, etc., R. Co.*, 229 U. S. 146, 57 L. Ed. 1125. The court, undertaking to follow the decision in that case decided the first controversy raised in the pleadings in favor of the defendant, holding that the federal statute was

applicable. Before the trial the supreme court of the United States decided the case of *Deleware, etc., R. Co.* v. *Yurkonis*, 238 U. S. 439, 59 L. Ed. 1397, and following the decision, in that case the court below changed its views upon the subject, as is indicated by the record of the trial. We think it was evident, and we insisted in the court below upon the first hearing, that the supreme court of the United States had gone to the uttermost limit in the Pedersen case and that there would evidently be a retrenchment instead of an advance in the construction of this act. We think we were borne out in this contention by the fact that three of the judges of that court dissented in that case and filed a strong dissenting opinion. We also contended, in which we think we were correct, that taking that decision at its full value this case did not fall within the rule there decided. We think that our contention at that time was abundantly warranted by the decisions of that court which followed.

In discussing this question we shall depend alone upon the decisions of the United States supreme court upon the subject, and we cite them as follows: *Delaware, etc., R. R. Co.* v. *Yurkonis, supra; Shanks* v. *Delaware, etc., R. R. Co.*, 239 U. S. 556, 60 L. Ed. 436; *I. C. R. R. Co.* v. *Cousins*, U. S. Adv. Ops., 1915, page 440. This is a memorandum opinion reversing the judgment of the supreme court of Minnesota in case of *Cousins* v. *I. C. R. R. Co.*, 148 N. W. 58; *Chicago, etc., R. R. Co.* v. *Harrington*, U. S. Adv. Ops., 1915, page 517; *Erie R. R. Co.* v. *Welsh*, U. S. Adv. Ops., 1916, page 116; *Minneapolis, etc., R. R. Co.* v. *Winters*, U. S. Adv. Ops., 1916, page 170; *Minneapolis, etc., R. R. Co.* v. *Nash*, U. S. Adv. Ops., 1916, page 239.

This is a memorandum opinion reversing the supreme court of Minnesota in *Nasy* v. *Minneapolis, etc., R. R. Co.*, 154, 957 and 155 N. W. 1102. *Baltimore, etc., R. R. Co.* v. *Branson*, U. S. Adv. Ops., 1916, page 244.

This is a memorandum opinion reversing the supreme court of Maryland in *Baltimore, etc.,* v. *Branson,* 98 Atlantic 225; *New York Central R. R. Co.* v. *White,* U. S. Adv. Ops., 1916, page 268.

The Yurkonis case which has been cited and followed in nearly every one of the other cases, is strikingly like the case at bar.  In that case Yurkonis was mining coal for use on interstate trains in a mine belonging to and operated by the railroad company.  In touching off a blast, by a premature explosion, he was injured.  In the case at bar the deceased was "mining" gravel in a pit operated by the railroad company for use on an interstate road,  and in punching down the gravel, by the premature falling of the gravel he was injured.  It would be difficult to find two cases nearer parallel.  The court says in the Yurkonis case:  "The mere fact that the coal was intended to be used in the conduct of interstate commerce after the same was mined and transported did not make the injury one received by the plaintiff while he was engaged in interstate commerce."

If there was any doubt left as to just what the court decided in that case it is explained by that court in the opinion rendered by the same distinguished court in *Shanks* v. *R. R. Co., supra,* where the court says:  "We have held that the requisite employment in interstate commerce does not exist where an employee in a colliery, operated by a railroad company, is mining coal intended to be used in the company's locomotive moving in interstate commerce."

In the Shanks case, the facts are that the plaintiff was at work for a railroad company engaged in interstate commerce, in its machine shop used for repairing parts of locomotives used in interstate transportation.  Usually his work consisted of repairing certain parts of locomotives, but at the time of the injury he was engaged in taking down and putting into a new location an overhead counter-shaft through which power was communi-

cated to some of the machinery used in repair work. The court concludes "that the work in which Shanks was engaged, like that of the coal miner in the Yurkonis case, was too remote from interstate transportation to be practically a part of it, and therefore that he was not employed in interstate commerce within the meaning of the Federal Employers' Liability Act."

In the case of *I. C. R. R. Co.* v. *Cousins, supra,* the facts as shown by the report of the case from the state courts are as follows: The plaintiff at the time of his injury was wheeling a barrow of coal to one of the car repair shops, for use in a heating stove, where the employees were engaged in repairing cars, the cars being for use in interstate as well as intrastate commerce. The state court held that the liability was under the Federal Employers' Liability Act but the supreme court of the United States, on February 21, 1916, reversed this decision upon the authority of the Yurkonis case and the Shanks case, *supra,* rendering no written opinion, but citing these cases as authority.

In the case of *Chicago, M. & I. R. R. Co.* v. *Margaret Harrington, supra,* the husband of the plaintiff was engaged in a railway yard in switching loaded coal cars belonging to the railway company, from a storage track to a coal shed, or chutes where the coal was being placed to be used by locomotives in interstate hands. The court holds that this was not interstate commerce so as to bring the case within the Federal Employers' Liability Act, citing the Yurkonis case as authority. It is interesting to note that in this case the court reviews the case of *Great Northern R. R. Co.* v. *Knapp,* 240 U. S. 464, U. S. Adv. Ops., 1915, page 399, where the plaintiff was attending upon a pump house where water was pumped into a tank for use in engines propelling interstate trains. While engaged in this work he was injured, and the lower court seems to have held that he was engaged in interstate commerce and the case was affirmed by the supreme

court.  This case has been relied upon as an authority, but I think it is evident from the reference to it in this' Harrington case, that had the question been raised in the lower court the decision would have been different.

In the case of *Erie R. R. Co.* v. *Welsh, supra,* a yard conductor on an interstate railway was injured by alighting from a slowly moving engine for the purpose of reporting to the yard master for further orders.  The court holds that he was not engaged in interstate commerce although the orders which he would have received had he not been injured would have required him immediately to make up an interstate train.

In *Minneapolis, etc., R. R. Co.* v. *Winters, supra,* a machinist's helper, making repairs in the round house upon an engine which had been used in hauling both interstate and intrastate freight and which was used in the same way after the accident, was held not to be employed in interstate commerce within the meaning of the Federal Employers' Liability Act.

In *Nash* v. *Minneapolis & St. Louis R. R. Co.,* 154 N. W. 957, decided by the supreme court of Minnesota, the state supreme court held that the plaintiff's intestate, while transporting an out-house for the purpose of installing it on the depot grounds of an interstate railroad was engaged in interstate commerce within the meaning of the Federal Employers' Liability Act.  The case was remanded and on the second appeal is reported in 155 N. W., page 1102.  The supreme court of the United States, on January 8, 1917, in a memorandum opinion reversed the decision of the state court, citing as authority the Yurkonis case, the Shanks case, the Harrington case and the Cousins case.

In the case of *Baltimore & O. R. R. Co.* v. *Branson,* 98 Atl. 225, the supreme court of Maryland held that the employee of an interstate railroad company who in the use of a painting machine or gun furnished by the railroad company, in painting engines and cars which were

used in interstate commerce, was employed in interstate commerce within the meaning of the Federal Employers' Liability Act. The supreme court of the United States on January 29, 1917, in a memorandum opinion reversed the decision of the state court, the *Harrington Case* and the *Winters Case, supra.*

This line of cases is sustained and followed in the case of *New York Central R. R. Co.* v. *Sarah White* and *Wm. Raymond* v. *Chicago, Milwaukee & St. Paul R. R. Co.*, both decided by the supreme court of the United States on March 6, 1917, both of which cases are cited above from the United States supreme court advance opinions, 1916, published by the Lawyers Cooperative Publishing Company.

It seems to me that the citation and review of these decisions, being the very latest by the United States supreme court, are sufficient argument to show that the case at bar is not controlled by the Federal Employers' Liability Act because the deceased was not at the time of his death engaged in interstate commerce within the meaning of that act, as construed by the highest court of the land.

COOK, P. J., delivered the opinion of the court.

The appellant relies on *Pedersen* v. *Railroad Co.*, 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, for a reversal of this case. The appellee stands behind *Railroad* v. *Yurkonis*, 238 U. S. 439, 35 Sup. Ct. 902, 59 L. Ed. 1397. It is insisted by appellee that all of the decisions of the supreme court since the decision in the Pedersen and Yurkonis Cases clearly indicate that the supreme court has intended to limit the influence of the Pedersen Case rather than to extend it. Whether this be true or not is not for us to say, but since appellant stands squarely upon the Pedersen Case, saying, ''If this case is sound, this case must be governed by

the federal act," we will examine the Pedersen Case and its applicability to the present case.  The gist of the Pedersen Case, as interpreted by appellant's briefs, is that Pedersen was "engaged in the repair of an interstate highway," and for this reason he was "employed in interstate commerce."  This analysis of the Pedersen Case seems to be sound, but it seems to us that the supreme court of the United States, in the Yurkonis Case drew in the lines somewhat, by holding that Yurkonis did not bring himself within the federal act.  He was mining coal intended to be used in interstate commerce, but the manner of receiving the injury was too remote to justify the conclusion that he was employed in interstate commerce.  A consideration of the facts developed upon the trial of the instant case, taken most favorably for appellant, indicate that the deceased was employed in mining gravel for the ultimate repairing or building of the highway over which the interstate commerce of the railroad would be operated.  Yurkonis was employed in mining coal to be used by the carrier to make steam power for the transportation of its commerce between the states, and yet the Supreme Court said: ·

"The manner of the receiving of the injury by plaintiff showed conclusively that it did not occur in interstate commerce."

May we not say the same about Mr. Houston?

It seems to us that the character of the work and the manner in which the injury was received in the Yurkonis Case and in the present case are strikingly similar.  On the other hand, Pedersen was working directly upon the highway, and received his injury by a train operated on the highway.  So, as we interpret the situation, this case is controlled by the principles of the Yurkonis Case.

We do not believe that the record shows that there was no negligence on the part of the defendant below, but, on the contrary, the jury were warranted in finding against the defendant on this issue.

The evidence in the case does not make a case for the application of the assumption of risk doctrine, nor do we think the evidence shows that decedent knew and appreciated the danger.

We find no error in the proceedings below, and the judgment will be affirmed.

*Affirmed.*