## CONWAY v. SOUTHERN PAC. CO.

### No. 4323.    Decided July 9, 1926.    (248 P. 115.)

1. COMMERCE—PLAINTIFF MUST HAVE BEEN ENGAGED IN INTERSTATE COMMERCE, OR DIRECTLY RELATED OR CLOSELY CONNECTED WORK, TO COME WITHIN FEDERAL EMPLOYERS' LIABILITY ACT (U. S. COMP. ST. §§ 8657-8665). To bring case within federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665), plaintiff, at time of injury, must have been engaged in interstate commerce, or work directly related to or so closely connected with it, as to be part of it.

2. COMMERCE—EMPLOYE, BLASTING ROCK TO FILL DISTANT INTERSTATE RAILROAD TRACK, HELD NOT ENGAGED IN INTERSTATE COMMERCE (FEDERAL EMPLOYERS' LIABILITY ACT). Employe, injured while blasting rock from employer's quarry, 10 or 15 miles from where it was used to fill up employer's railroad track, used in interstate commerce, *held* not engaged in such commerce, within federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665).[1]

Appeal from District Court, Second District, Weber County; *J. N. Kimball,* Judge.

Action by Mathew Conway against the Southern Pacific Company. From a judgment sustaining a demurrer to the complaint, plaintiff appeals.

AFFIRMED.

*R. S. Farnsworth* and *Jos. E. Evans,* both of Ogden, for appellant.

*Bagley, Judd & Ray,* of Salt Lake City, for respondent.

STRAUP, J.

---

[1] *Shurtliff* v. *O. S. L. R. R. Co.,* 241 P. 1059; *Perez* v. *Union Pacific,* 52 Utah, 286, 173 P. 236; *Denver & R. G. W. R. R. Co.* v. *Ind. Comm.,* 60 Utah, 95, 206 P. 1103; *Utah Rapid Transit Co.* v. *Ind. Comm.,* 59 Utah, 232, 204 P. 87; *Larkin* v. *Ind. Comm.,* 60 Utah, 274, 208 P. 500.

Corpus Juris-Cyc. References:

[1]    Commerce 12 C. J. p. 44 n. 14.
[2]    Commerce 12 C. J. p. 44 n. 18.

This action was brought by appellant to recover damages for personal injury. It was based on the Employers' Liability Act of Congress (U. S. Comp. St. §§ 8657-8665). The case below went off on a demurrer to the complaint. The plaintiff appeals.

In the complaint it in substance is alleged that the respondent was an interstate common carrier, and at the time of the injury and prior thereto was engaged in making repairs on its railroad track across Great Salt Lake, and used in interstate commerce, by rock fills and raising the track, and in connection therewith had a large number of men in its employ hauling train loads of rock from Promontory Point to the fills; that interstate commerce trains were continued to be operated over the track while being so repaired, that the appellant was employed by the respondent as a powderman's helper and laborer, to loosen rock along the side of a mountain at Promontory Point, and which rock, by means of a steam shovel, was by others loaded into cars on side tracks and hauled to the fills, a distance of 10 or 15 miles; that when the plaintiff was injured he was engaged in loosening rock by the use of powder and dynamite placed in holes cut and blasted into the rock along the side of the mountain; that the appellant, under the direction of a superior, was about to connect up wires for a discharge of powder, and in doing so a large amount of rock and earth fell on him from the mountain side and injured him. The negligence alleged in such respect is that the respondent,. without appellant's knowledge and without warning him, had removed props and structures to protect the appellant and others from falling rock, and thus had not furnished him a reasonably safe place to work, and thereby exposed him to unusual and unnecessary danger, of which he was ignorant.

It is further alleged that the rock so loosened on the mountain side by the appellant and others was loosened for the purpose of being hauled and used in the fills and to raise the railroad track of the respondent used in interstate com-

merce. It is not alleged that the appellant had anything to do with loading the rock into the cars or hauling them to the track, or that he did any work on or about the track so being repaired, filled, and raised. As alleged, the only work at which the plaintiff was employed was to blast and loosen rock from the mountain side or the rock quarry of the respondent.

To bring the case within the provisions of the act, it was necessary, and it so is conceded, that the appellant at the time of the injury must have been engaged in interstate commerce, or that the work must have been directly related to such commerce, or so closely connected with it as to be a part of it. The appellant contends, and the respondent denies, that the work engaged in by the appellant was of such character. The case went off on that point. To support his contention the appellant chiefly relies on the cases of *Pedersen* v. *D., L. & W. R. R. Co.,* 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; *Kinzell* v. *C., M. & St. P. Ry.,* 250 U. S. 130, 39 S. Ct. 412, 63 L. Ed. 893; *Phila., B. & W. R. R.* v. *Smith,* 250 U. S. 101, 39 S. Ct. 396, 63 L. Ed. 869; *New York Cent.* v. *Porter,* 249 U. S. 168, 39 S. Ct. 188, 63 L. Ed. 536; *Southern Ry. Co.* v. *Puckett,* 244 U. S. 571, 37 S. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69; *Stiedler* v. *Penn. R. R. Co.,* 94 N. J. Law, 197, 109 A. 512—and cites about 27 other cases, both from federal and state courts, which he claims also support his contention.

The respondent, to support its contention, cites and relies on *Denver & R. G. W. R. R. Co.* v. *Ind. Comm.,* 60 Utah, 95, 206 P. 1103; *Perez* v. *Union Pacific,* 52 Utah, 286, 173 P. 236; *Ind. Comm.* v. *Davis,* 259 U. S. 182, 42 S. Ct. 489, 66 L. Ed. 888; *McLeod* v. *So. Pac. Co.* (D. C.) 299 F. 616; *Delaware, L. & W. R. R. Co.* v. *Yurkonis,* 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 1397; *Yazoo & M. V. Ry. Co.* v. *Houston,* 114 Miss. 888, 75 So. 690; *Malandrino* v. *So. N. Y. P. & Ry. Corp.,* 190 App. Div. 780, 180 N. Y. S. 736; *Karras* v. *C. & N. W. Ry.,* 165 Wis. 578, 162 N. W. 923, L. R. A. 1917E,

677, and cases to show that the work at which the appellant was engaged was mining, and that mining is not commerce, *Heisler Case,* 260 U. S. 245, 43 S. Ct. 83, 67 L. Ed. 237; *Oliver Iron Works Case,* 262 U. S. 172, 43 S. Ct. 526, 67 L. Ed. 929; *United Mine Workers* v. *Coronado Coal Co.,* 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762, and numerous other cases which the respondent claims support its contention that the appellant was not engaged in commerce.

It is difficult to harmonize all the cases on the subject, as well as the test when an employe is and when he is not engaged in interstate commerce. In the Pedersen Case, supra, the test laid down by the majority members of the court is whether the work done was independent of the interstate commerce in which the carrier was engaged, or whether it was so closely connected therewith as to be a part of it, and it was declared that tracks, bridges, engines, and cars were indispensable to interstate commerce, and that work of keeping such instrumentalities in proper state of repair while used in interstate commerce was so closely related to such commerce as to be in practice and in legal contemplation a part of it. The dissenting members in that case asserted that "transportation was commerce," and that those engaged in transportation were employed in commerce. They asserted that the line must be drawn between those employes of the carrier who were employed in commerce and those engaged in other departments of the carrier's business, and that "it must be drawn so as to take in on the one side those engaged in transportation, which is commerce; otherwise, there is no legal reason why it should not include every agent of the company." And inasmuch as the employe in the Pedersen Case was not engaged "in transportation," the dissenting members regarded the employe there not engaged in commerce. A number of cases, both federal and state, have since approved and followed the test so laid down by the prevailing opinion in the Pedersen Case. Other courts, both federal and state,

without expressly stating so, seem to have followed the test laid down by the dissenting members. And in the case of *Ind. Comm.* v. *Davis*, 259 U. S. 182, 42 S. Ct. 489, 66 L. Ed. 888, the court, in no particular claiming to depart from the Pedersen Case or to modify it, declared that:

" * * * The federal act gives redress only for injuries received in interstate commerce. But how determine the commerce? Commerce is movement, and the work and general repair shops of a railroad, and those employed in them, are accessories to that movement, indeed, are necessary to it; but so are all attached to the railroad company, official, clerical, or mechanical. Against such a broad generalization of relation, we, however, may instantly pronounce, and successively against lesser ones, until we come to the relation of the employment to the actual operation of the instrumentalities for a distinction between commerce and no commerce. In other words, we are brought to a consideration of degrees, and the test declared, that the employe at the time of the injury must be engaged in interstate transportation or in work so closely related to it as to be practically a part of it, in order to displace state jurisdiction and make applicable the federal act."

Said the court further:

"The test of the employment and the application of the federal Employers' Liability Act * * * is: 'Was the employe at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?' "—citing *Shanks* v. *D., L. & W. R. R. Co.*, 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; *Chicago, B. & Q. R. R. Co.* v. *Harrington*, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941, and *Southern Pacific Co.* v. *Ind. Acc. Comm.*, 251 U. S. 259, 40 S. Ct. 130, 64 L. Ed. 258, 10 A. L. R. 1181.

If this test be literally accepted, then the appellant was not, nor was the employe in the Pedersen Case, nor the employe in a great majority of the cases where he was held to be engaged in interstate commerce, engaged in such commerce. The Pedersen Case is regarded a leading case, and has been approved and followed by a majority of the cases, both federal and state, and until it is overruled by the Supreme Court of the United States, or modified in such particular, we are disposed to follow it.

However, we think the case in hand does not fall within it, nor, generally speaking, within the cases cited and relied on by the appellant. In the main, the cases so cited by him deal with an employe who was engaged in repairing or at work on a bridge, track, or other instrumentality, used by the carrier in carrying on interstate commerce and doing work so closely or directly related to such commerce as to be a part of it. Here the employe was one or several degrees removed from such a situation. What we recently said in the case of *Shurtliff* v. *O. S. L. R. R. Co.*, 241 P. 1059, may, to a large extent, be said here. There the employe was doing work installing poles and wires to light a tie-treating plant, the ties of which were intended to be and were used by the carrier to maintain and repair its track or tracks used in interstate commerce. In holding that the employe was not engaged in such commerce we said:

"The tie-treating plant was itself separate and distinct from the railroad, its tracks, spurs, switches, etc., and was in no way connected with or served any function in the operation of engines, cars, or trains, nor was it otherwise connected with or related to the operation or operating system of the road, and, so far as made to appear, was not itself in any sense otherwise directly connected with, or related to, or was a factor in interstate commerce; that the work which plaintiff did on the day of the accident and on the day before was at and directly related to the plant, doing what he then did to furnish light and power to and for the plant or work with respect thereto; that such work had nothing to do with furnishing or supplying electric current or energy to the interlocking station or tower, or with the conduct or operation of engines of cars, or the railroad, or any part of its system; and that the most that can be said of the situation is that the ties and other wood material treated at the plant were used and were intended to be used all over the defendant's interstate road, whenever and wherever such material was needed. We think such factor or element too remote, and, within the meaning of the cases, was not so directly or closely related to interstate commerce as to be a part of it. As well say that one engaged or employed to cut or saw timber for ties in the defendant's forest, to be used on defendant's interstate road, or one installing or working on instrumentalities or devices to supply light and power to a mill where such timber is cut or sawed, is engaged or employed in interstate commerce."

Here the employe was engaged in blasting and breaking down rock from a ledge of rock in a mountain, from the respondent's quarry. After the rock was broken down, it by others was loaded into cars and carried a distance of 10 or 15 miles, as we deduce from the allegations of the complaint, and was there used to fill up and raise the track across the lake. On its facts we think the case comes within the case of *Delaware, L. & W. R. R. Co.* v. *Yurkonis,* supra, where the employe was preparing and setting off a charge of dynamite for the purpose of blasting coal in the carrier's colliery or mine, and where the court said:

"The averments of the complaint as to the manner of the receiving of the injury by plaintiff show conclusively that it did not occur in interstate commerce. The mere fact that the coal may be or was intended to be used in the conduct of interstate commerce, after the same was mined and transported, did not make the injury one received by the plaintiff while he was engaged in interstate commerce. The injury happening when plaintiff was preparing to mine coal was not an injury happening in interstate commerce, and the defendant was not then carrying on interstate commerce, facts essential to recovery under the Employers' Liability Act."

This case also directly comes within the case of *McLeod* v. *So. Pac. Co.,* supra, where the employe was engaged in mining rock from the carrier's quarry, intended to be used in repairing its line of railway used in interstate commerce. The court said:

"A fair interpretation of the allegations of plaintiff's petition is that, at the time of the injury to plaintiff, he was engaged in mining rock intended to be used in the repair or improvement of defendant's roadbed. This was not an interstate commerce service, nor so closely connected with such service as to be a part thereof. It has frequently been held that mining, like manufacturing, is not interstate commerce" —citing numerous cases. "That the rock which plaintiff was engaged in taking from the quarry at the time he was injured was intended for use in repairing the defendant's roadbed, which was being used for interstate commerce, did not make his employment interstate commerce."

To the same effect are the cases of *Heisler* v. *Colliery Co.,* 260 U. S. 245, 43 S. Ct. 83, 67 L. Ed. 237; *Oliver Iron Min. Co.* v. *Lord,* 262 U. S. 172, 43 S. Ct. 526, 67 L. Ed. 929; *United Mine Workers* v. *Coronado Coal Co.,* 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762.

Thus, under the authorities, and especially under the authority of *McLeod* v. *So. Pac. Co.,* supra, it would seem that the appellant, in blasting and breaking down rock, was engaged in mining, and, if the character of his work shall be regarded as such, then clearly he was not engaged in commerce.

In the case of *Karras* v. *C. & N. W. Ry. Co.,* 165 Wis. 578, 162 N. W. 923, L. R. A. 1917E, 677, it was held that the work being done by a railroad employe when injured determines whether he was engaged in interstate commerce within the Employers' Liability Act, and that, where a railroad section repair hand was peeling ties intended for use in defendant's interstate roadbed when injured, he was not engaged in interstate commerce within the federal Employers' Liability Act. To the same effect are the cases of *Missouri, K. & T. Ry. Co.* v. *Watson* (Tex. Civ. App.) 195 S. W. 1177, and *Sullivan* v. *C., M. & St. P. Ry. Co.,* 163 Wis. 583, 158 N. W. 321. In the latter case the court said:

"Without going into the technic of the matter, we will state our conclusion to be that work of preparing articles for interstate commerce is not a part of such commerce, within the meaning of the federal Employers' Liability Act"—citing a number of cases from the Supreme Court of the United States.

In the case of *Perez* v. *Union Pacific,* 52 Utah, 286, 173 P. 236, this court held that a railroad employe, assisting in removing discarded rails to a scrap pile, after other employes had detached the rails from the track, was not engaged in interstate commerce within the meaning of the federal Employers' Liability Act, although the men who detached the rails worked under the same foreman and helped in removing the rails to the scrap pile. If what the

employe there did was not so closely related to or connected with commerce as to be a part of it, then we think it follows that the employe here was not engaged in commerce. That may also be said of the cases of *Denver & R. G. W. R. R. Co.* v. *Ind. Comm.*, 60 Utah, 95, 206 P. 1103, *Utah Rapid Transit Co.* v. *Ind. Comm.*, 59 Utah, 232, 204 P. 87, and *Larkin* v. *Ind. Comm.*, 60 Utah, 274, 208 P. 500.

The case of *Yazoo & M. V. R. R. Co.* v. *Houston*, 114 Miss. 888, 75 So. 690, also is in point. There the employe was engaged in loading sand and gravel on cars for use in repairing the carrier's interstate roadbed, and where it was held that he was not engaged in interstate commerce within the meaning of the act. The court, referring to the Pedersen Case, said:

"This analysis of the Pedersen Case seems to be sound, but it seems to us that the Supreme Court of the United States, in the Yurkonis Case drew in the lines somewhat, by holding that Yurkonis did not bring himself within the federal act. He was mining coal intended to be used in interstate commerce, but the manner of receiving the injury was too remote to justify the conclusion that he was employed in interstate commerce. A consideration of the facts developed upon the trial of the instant case, taken most favorably for appellant, indicate that the deceased was employed in mining gravel for the ultimate repairing or building of the highway over which the interstate commerce of the railroad would be operated."

To the same effect is the case of *Malandrino* v. *Railroad,* supra.

The case most strongly relied on by the appellant is the case of *Phila., B. & W. R. R. Co.* v. *Smith*, 250 U. S. 101, 39 S. Ct. 396, L. Ed. 869. There the employe was a cook and camp cleaner or attendant of a gang of bridge carpenters repairing and working on a bridge of the carrier's railroad track used in interstate commerce. The court, in following and approving the Pedersen Case held that the work being done by the gang of carpenters was so closely related to interstate commerce as to be a part of it and that the work done by the cook or attendant was also a part of such work,

and hence held that he too was engaged in interstate commerce. The cook and attendant did his work in a camp car on a switch or side track near the bridge where the work of the carpenters was being done. Said the court:

"He [the injured employe] was employed in a camp car which belonged to the railroad company, and was moved about from place to place along its line according to the exigencies of the work of the bridge carpenters, no doubt with the object, and certainly with the necessary effect, of forwarding their work, by permitting them to conduct it conveniently at points remote from their homes and remote from towns where proper board and lodging were to be had. The circumstance that the risks of personal injury to which plaintiff was subjected were similar to those that attended the work of train employes generally, and of the bridge workers themselves when off duty, while not without significance, is of little moment. The significant thing, in our opinion, is that he was employed by defendant to assist, and actually was assisting, the work of the bridge carpenters by keeping their bed and board close to their place of work, thus rendering it easier for defendant to maintain a proper organization of the bridge gang, and forwarding their work by reducing the time lost in going to and from their meals and their lodging place. If, instead, he had brought their meals to them daily at the bridge upon which they happened to be working, it hardly would be questioned that his work in so doing was a part of theirs. What he was in fact doing was the same in kind, and did not differ materially in degree. Hence he was employed, as they were, in interstate commerce, within the meaning of the Employers' Liability Act."

It is apparent that the court, considering the case from the particular situation of the premises, with the camp car on the side or switch track close to the bridge, and the kind of work performed by the employe, regarded such work as directly and "actually assisting the work of the bridge carpenters." In other words, the court regarded the work so being done by the cook and attendant as having been done on and about, and not away from an instrumentality used in interstate commerce. We think the case here presents a different situation, one where the employe was not engaged on or about any instrumentality used in interstate commerce, but miles away from it and at work which, at most,

but indirectly or remotely affected commerce. In the one instance the court regarded the work of the employe as having direct relation to the actual operation of an instrumentality used in interstate commerce, while here no such direct relation is perceived.

We therefore think the demurrer was properly sustained, and that the judgment of the court below should be affirmed. Such is the order.

GIDEON, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.