HARRINGTON et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5969.   Decided March 30, 1939.   (88 P. 2d 548.)

For prior opinion, see 96 Utah 32, 83 P. 2d 270.

*A. H. Hougaard,* of Salt Lake City, for plaintiffs.

*Joseph Chez,* Atty. Gen., and *Bagley, Judd, Ray & Nebeker,* of Salt Lake City, for defendants.

WOLFE, Justice.

This opinion is on rehearing. Plaintiff brought certiorari to the Industrial Commission to review an order refusing to take jurisdiction of a claim for compensation for the death of H. M. Harrington which death was caused by an accident which occurred in the course of employment. The death was caused by a truck, not operated by the railroad, which struck Harrington while he was crossing a public highway to open gates in order to permit a switching crew to enter an industrial siding. Recovery under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51-59, was, therefore, in any event precluded. The detailed facts will be more illuminating if the reader has in mind the questions presented by them.

The questions are:

I. Are there any different tests to determine whether an employee of a railroad at the time he was injured was working in inter- or intrastate commerce from those laid down by the Federal courts in applying the Federal Employers' Liability Act when the said Act is not applicable as in this case?

II. If not, was the decedent at the time of his injury working in intrastate or interstate commerce, according to the tests laid down in rulings under the Federal Employers' Liability Act?

III. If he was working in interstate commerce, can the Utah Compensation Act apply because the case is not covered by the Federal Employers' Liability Act?

Posing these three questions we state the detailed facts. The defendant railroad company, operating between Salt Lake City and Payson, Utah, employed more than three employees and had complied with all the provisions of the Workmen's Compensation Act of Utah (Rev. St. 1933, 42-1-1 et seq.).

On February 9, 1937, deceased was working as a brakeman on a train of seventeen cars operated by defendant

south bound between Salt Lake City and Provo, Utah. The train included a carload of interstate freight, to wit, a car of scrap paper billed and being transported in interstate commerce from Salt Lake City to Kalamazoo, Michigan, and a car of poultry feed originating at Salt Lake City and being transported to American Fork where the defendant railroad company was to deliver the car to the Utah Poultry Company at its place of business in that town. By well recognized principles laid down by the federal courts, it is admitted that the inclusion of the interstate car made the whole train interstate and the handling of the interstate train interstate commerce.

The Utah Poultry Company and the Chipman Mercantile use the same industrial track and siding. There is a gate which had to be unlocked and opened to permit the car of feed to enter the private premises of the companies above named. It was while Harrington was crossing the street to open this gate that a truck coming along the highway struck him and caused his death. It remains to follow his movements before this happening in order to present a proper basis for a conclusion. When the interstate train arrived at the town of American Fork, the crew thereof, consisting of Harrington and his fellow employees, detached the engine and the car of poultry feed from the train and moved down the main line about one-half mile, near the American Fork station, and stopped it there temporarily. The engine, then detached, moved into the house or station track, and was coupled onto a car of coal which had stood there two or three days. This coal car was moved out to the main line and placed in a position where, when its brakes were released, it rolled by gravity down to the feed car which, as before stated, had been left on the main track. After lining up the switch to permit the coal car to roll down as described, Harrington walked east along the street and was crossing the street on errand bent to open the gates when he was struck and injured. It is conceded that he was to open the gates in order to permit the engine to enter the industrial siding of

the Chipman Mercantile Company and Utah Poultry Company. The engine was to go into the industrial track in order to move two cars which were spotted there. It is a fair intendment from the whole situation that those last two cars were to be moved so that the feed and coal cars could be moved to a point farther on in the siding than the two cars there spotted. Otherwise, there appeared to be no necessity of moving the said two cars. With these facts in mind the first question may be considered. The question may be stated as follows: Is the Industrial Commission, in determining whether it has jurisdiction under Sec. 42-1-89, R. S. Utah 1933, in an application for compensation required to apply the same tests of whether an employee is engaged in interstate or intrastate commerce that the courts have laid down to give the employee engaged in the railroad industry protection under the Employers' Liability Act?

The courts have gone far to hold a particular act interstate commerce so as to give the employee the benefit of the Federal Employers' Liability Act. Where in no way the employee can take advantage of the Employers' Liability Act, as in this case, because of lack of negligence on the part of the railroad, should there be a different standard of determining whether or not the work in which the employee was engaged at the time of the accident was interstate commerce? We think not. The standards and tests laid down by the courts for the determination of what is an interstate commerce act for purposes of ascertaining whether the Employers' Liability Act applies must also determine whether the Commission has jurisdiction under Section 42-1-89, R. S. Utah 1933. When the employee asserts negligence on the part of the railroad, he receives the benefit of decisions which hold such an act as Harrington was engaged in at the time of the accident to be interstate commerce. Because there was no negligence, the dependents of Harrington cannot take the position that the act was an intrastate act. We cannot give an act the aspect of inter-

state commerce for the purpose of the Federal Employers' Liability Act and the same act the aspect of intrastate commerce for the purposes of giving the Industrial Commission jurisdiction when the Employers' Liability Act cannot apply. Section 42-1-89 reads as follows:

"The provisions of this title shall apply to employers and their employees engaged in intrastate and also in interstate and foreign commerce *for whom a rule of liability or method of compensation has been or may be established by the congress* of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce." (Italics added).

It is abstruse and involved. As drafted it was undoubtedly intended to enable a definite horizontal separation of those employees "connected with intrastate work" when their work was clearly separable and distinguishable from interstate work, not according to a test which depended upon the nature of the particular work the employee was doing at the time of the accident, but by a test of whether their regular work was connected only with intrastate commerce. The theory was that an employer engaged in both intrastate and interstate commerce (or his insurer) should be able to count before hand and clearly classify those employees engaged entirely, definitely, and regularly in intrastate commerce. The section was never intended to give the Commission jurisdiction of a case where the employee might at one moment be engaged in intrastate and the next moment in interstate commerce, just because at the time of accident his work happened to be intrastate. But alas, the courts early construed this section so as to make the nature of the act at the time of the accident the test of whether the employee was engaged in intrastate or interstate commerce. The closest cases to the other theory are *Miller* v. *United Fuel Gas Co.*, 88 W. Va. 82, 106 S. E. 419; *Suttle* v. *Hope Natural Gas Co.*, 82 W. Va. 729, 97 S. E. 429; *Powers* v. *Murray*, 266 Mich. 688, 254 N. W. 559.

In this jurisdiction we have made the work at the time of the accident the test. *Roach* v. *Los Angeles & S. L. R. Co.*, 69 Utah 530, 256 P. 1061; *Denver & R. G. W. R. Co.* v. *Industrial Comm.*, 60 Utah 95, 206 P. 1103; *Utah Rapid Transit Co.* v. *Industrial Comm.*, 59 Utah 232, 204 P. 87; *Conway* v. *Southern Pac. Co.*, 67 Utah 464, 248 P. 115, 49 A. L. R. 1316; *Southern Pac. Co.* v. *Industrial Comm.*, 71 Utah 248, 264 P. 965. The rule that the nature of the work at the time of the accident governs the classification seems deeply rooted here and elsewhere. Since, therefore, the test of whether the employee is in the intrastate or interstate field depends on the character of the act he is doing at the time of the accident the question arises, can an act which is characterized as interstate commerce for the purpose of giving the employee a recovery for negligence under the Federal Employers' Liability Act be characterized differently as intrastate work so as to make the Workmen's Compensation Act ·applicable? Certainly the act of hauling a mixed train of intrastate and interstate cars cannot be separated as to interstate and intrastate work. It is all interstate. But it is arguable that in certain cases, including the instant case, although the deceased was at the time of the accident engaged in interstate work, so far as the protective application of the Federal Employers' Liability Act is concerned, because it was all incidental to the interstate function of the ultimate spotting of an intrastate car taken from an interstate train, yet the intrinsic quality of the act was intrastate. In other words, while the courts endeavored to go as far as possible to find an act a part of interstate commerce, so as to bring all employees possible under the protection of the Federal Employers' Liability Act, and thus characterize acts in quality intrastate as interstate because incidentally connected or reasonably approximate to the work of interstate movement, yet if there was no negligence of the interstate employer involved and therefore no reason for extending the protection of the Liability Act, the work at the time of the accident being in quality intrastate would,

so far as compensation is concerned, be considered as intrastate work. We fear such classification would be illegal and bring about great confusion. Mr. Justice Brandeis, in his dissenting opinion in the case of *New York Central R. Co.* v. *Winfield,* 244 U. S. 147, 37 S. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139, concluded that an act in *interstate* commerce, not covered by the Federal Employers' Liability Act because there was no negligence, was compensable under the New York compensation act (Consol. Laws, c. 67) as if it had been purely intrastate work. We might well wish the Supreme Court of the United States had held with Mr. Justice Brandeis. But the majority of the court was the other way. The court held that even if Congress did not cover all situations wherein an accident occurred, but only those with a negligence foundation, it nevertheless intended to occupy the field of regulating the matter of an employee's rights for injury while engaged in *interstate* commerce. Hence the jurisdiction of the states, by such expression of congressional will to preempt the field, was ousted. And this is the reason why the phrase "for whom a rule of liability or method of compensation has been or may be established by the congress" was inserted in the State Act (section 113) as part of the description of the class of employers carrying on both kinds of commerce who must respond for compensation only for accidents occurring in intrastate work. Certainly if the Supreme Court of the United States refused to permit the state compensation law to apply to an accident in interstate commerce, not covered by the Federal Employers' Liability Act, it is difficult to see how that principle could be circumvented by calling an act denominated as interstate commerce for purposes of the Federal Employers' Liability Act, an intrastate act for purposes of making the state compensation act apply. If the Federal Employers' Liability Act completely occupies the field of regulation of employers' obligations to employees for accidents occurring in interstate commerce, then the test of *interstate* commerce for the pur-

pose of ascertaining the extent of that field over which the Employers' Liability Act operates to the exclusion of the state compensation acts must be the same as is laid down by the courts when a workman sues under the Federal Employers' Liability Act. Mr. Justice Brandeis did not attempt to place his dissent on the basis that an act found to be interstate by the tests used when the Federal Employers' Liability Act was invoked should be considered intrastate when it was not covered by said act. He took a sounder and broader position. He thought that even though an interstate act, since it was not specifically covered by the Employers Libility Act because no negligence was involved, it should be held that Congress had not intended to cover or legislate in regard to that situation and that Congress had not preempted that part of the field of employer-employee relationships in *interstate* commerce. He recognized that the state's jurisdiction to legislate in matters of local concern in interstate commerce adheres until Congress speaks on the subject matter. He then took the position that the subject matter in regard to which Congress spoke when it passed the Federal Employers' Liability Act was on the employer's *liability for negligence* to its employee injured by reason of such *negligence* while engaged in interstate commerce. The majority of the court took the position that the subject matter in regard to which Congress spoke was the total subject matter of the employer's liability in case of injury suffered by an employee engaged in interstate commerce, regardless of whether it occurred by negligence of the employer or some third party or whether it was caused by no negligence. The fact that there would be some situations in which the employee could not recover because his master was not negligent did not prevent Congress from having entered and spoken regarding the complete field of liability of the employer for injury to his employee. Whether or not we agree with this conclusion we are bound by it.

Having concluded that there is no different test as to what constitutes interstate commerce when determining

whether the Industrial Commission has or has not jurisdiction from that which pertains when recovery is sought under the Federal Employers' Liability Act, we pass to the next question, namely, whether Harrington was at the time of the accident engaged in interstate or intrastate commerce.

We have seen that the act he was engaged in at the time of the accident determines this question. At the time he was injured he was in the act of proceeding toward the gates which he intended to open in order to permit the engine to enter so that it might temporarily remove the two cars standing on the siding which were an obstruction to the final spotting of the feed car. There is no dispute that Harrington's acts in relation to the whole train of cars, which was given an interstate quality by virtue of the inclusion of one interstate car, constituted the conduct of interstate commerce. Roberts Federal Liability of Carriers, Sec. 742; *Zenz et al.* v. *Industrial Acc. Comm.*, 176 Cal. 304, 168 P. 364, L. R. A. 1918D 423; *Baker* v. *Southern Pac. Co. et al.*, 184 Cal. 357, 193 P. 765.

There should be no dispute that the taking out of the feed car and all acts performed incidental to finally spotting it still retained the quality of interstate commerce. The mere fact of separating the intrastate car from the interstate train by the crew in charge of the interstate train does not make all acts thereafter in respect to such intrastate car necessarily intrastate commerce, especially if those acts are performed by the crew which has charge of the interstate train, and part of its duties is to bring the intrastate car portion of the interstate train to such a position of rest that subsequent movement of said car ceases to be an interstate movement. *New York Central & H. R. R. Co.* v. *Carr*, 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298; *Roach* v. *Los Angeles & S. L. R. Co.*, 69 Utah 530, 256 P. 1061, on second appeal 74 Utah 545, 280 P. 1053.

There seems to be little doubt that if Harrington had not come from finishing an operation which involved the

movement of the coal car which had concededly lost its interstate character (if it had while so loaded with coal previously had an interstate character) or if his moving to open the gate had not been for the purpose of permitting the moving of two intrastate cars already spotted on the siding, but instead had been in the transition from an act last dealing directly with the feed car to the act of opening the gate to permit the feed car to be switched into the siding, there would be no question about his being, at the time of the accident, engaged in interstate commerce. But it is contended that because he diverted the intrastate coal car (so as to make it a part thereafter of the movement of the feed car, so that the two would move together), and because the last thing he did pertained to the coal car, and because he was on his way to open the gate for the immediate purpose of permitting two intrastate cars to be moved when he was hit, we must hold that he was at the time he was struck engaged in intrastate commerce. But acts in reference to the coal car were for the purpose of coupling it with the feed car so they could both move together to the place where they were to be unloaded. The acts in reference to the coal car were finished. Harrington was at the time of the accident in the progress of doing a preliminary act necessary to accomplish a still further preliminary act of moving two intrastate cars which were obstacles to the movement of the feed car to the final place of spotting where it would cease to move in interstate commerce and rest as an intrastate car. All these necessary preliminary movements were a part of the switching operation of the still interstate feed car. As so aptly stated by Mr. Chief Justice Folland in his dissenting opinion to the court's original opinion in this case, 96 Utah 32, 83 P. 2d 270, 276:

"It was also conceded there could be no controversy in this case if the train crew had been engaged exclusively in spotting the feed car, that the whole transaction would have to be characterized as interstate. The question arises because after cutting the feed car from the interstate train and before spotting it the train crew received

orders to also spot a coal car which had been on the house track for two or three days. The switching of the two cars already spotted was a mere incident to the spotting of the feed car and the coal car. But for the spotting of the feed car and the coal car there would have been no necessity to move the two cars already on the house track. They were in proper place and were not yet ready to be taken away. All movements in the switching operation had been accomplished up to the point of moving out the two spotted cars so that the feed car and the coal car could be placed north of them. In order to move these cars out and the others in, it became necessary to open the gate. While approaching the gate, Harrington was fatally injured. To finish the movement would have required the engine to proceed north through the open gate, attach the two cars, draw them out to the main line, couple on to the coal car and feed car, draw the four cars south on the industrial track past the switch, then push them north on the same track, leaving the cars in this position, the feed car farthest north, the coal car next, and the two other cars returned to their former position. It is perfectly apparent that the opening of the gate and movement of the two spotted cars was merely incidental to the proper placing of the feed car and the coal car."

We conclude that the principles laid down by the federal cases which are binding on us compel us to hold as a matter of law that Harrington at the time of the accident was engaged in interstate commerce.

The third question is whether, even though an employee is at the time of injury engaged in interstate commerce, the Industrial Commission should not have jurisdiction of the claim if the case does not come within the purview of the Federal Employers' Liability Act. This question seems to be settled by the majority opinion in the case of *New York Central R. Co.* v. *Winfield,* supra. What has been said in reference to that case under question one above is applicable here. While there may be much to be said for the dissenting opinion of Mr. Justice Brandeis we are bound by the majority opinion.

In conclusion, therefore, we must hold that the Industrial Commission was without jurisdiction and hence its order dismissing the application for compensation is affirmed.

McDONOUGH, J., concurs.

PRATT, Justice (concurring).

I concur for the reason that the opening of the gate and the movement of the two cars on the siding were each essential to the proper spotting of the feed car; and the spotting of the feed car was in interstate commerce. That other duties of an intrastate nature were, or would have been, accomplished by those same acts, did not relieve them of their interstate character acquired through their relationship to the spotting of the feed car.

MOFFAT, Chief Justice (dissenting).

I cannot concur either in the reasoning or result arrived at in the determination of whether Harrington was engaged in interstate or intrastate commerce. I am willing to admit that according to the tests laid down by the decided cases there is room for difference of opinion. I shall not restate the facts or reasons leading to the conclusion reached by this court in the prevailing opinion reported in 83 P. 2d 270. While other and additional reasons might be given or facts recited such reasons or analysis of facts might be no more convincing than those already stated. To some, the analysis of the situation would lead to one conclusion, to others to the other conclusion as to whether the particular activity in which Harrington was engaged was interstate or intrastate commerce. The matter about which I am most concerned is that I have an abiding sense of injustice in the result arrived at by the prevailing opinion. The judgment of my mind compels a statement of my position.

That the Salt Lake and Utah Railroad Company and its employees were subject to the Workmen's Compensation Act of Utah providing protection for employees is not a matter of controversy. If the Company was not a self-insurer it was either insured by the State Insurance Fund or by an approved insurance carrier. Harrington was injured by a third party while in the course of his employment.

That Harrington was injured, which injury resulted in his death by accident arising out of or in the course of his employment, is not only admitted but asserted and found by all who have considered the matter. For the purposes of this discussion, I am going to leave out of consideration the provisions of Section 42-1-89 of the Utah Statutes for a number of reasons: First, The Industrial Commission found that Harrington at the time of his injury was engaged in interstate commerce. The prevailing opinion so finds. Second, if the Utah statute was intended to exclude all persons injured while engaged in an activity that might by the most attenuated construction be brought within the remotest relationship to interstate commerce, such intention is directly contrary to the declared purposes of the statute. Section 42-1-43, R. S. Utah 1933 provides:

"Every employee mentioned in section 42-1-41 who is injured, and the dependents of every such employee who is killed, by accident arising out of or in the course of his employment, wheresoever such injury occurred, provided the same was not purposely self-inflicted, shall be entitled to receive, and shall be paid, such compensation for loss sustained on account of such injury or death, and such amount for medical, nurse and hospital services and medicines, and, in case of death, such amount of funeral expenses, as is herein provided."

And Section 42-1-58 provides:

"When any injury for which compensation is payable under this title shall have been caused by the wrongful act of a third person, the injured employee, or in case of death his dependents, may at their option claim compensation under this title or have their action for damages against such third person; and, if compensation is claimed and awarded, the employer or insurance carrier having paid the compensation shall be subrogated to the rights of such employee or his dependents to recover against such third person; provided, if such recovery shall be in excess of the amount of the compensation awarded and paid, then such excess, less the reasonable expenses of the action, shall be paid to the employee or his dependents."

It is assumed in this discussion that the prevailing opinion is based upon the "tests laid down by the courts" in determining whether an act is done in interstate commerce.

I trust that I shall not be regarded as other than honest in the expression of the views herein, even though at variance with those of this court and other courts for which I have the greatest respect. If I am wrong no one may be injured and I may be taught. If I am right then consideration may be given to the views expressed.

There are three situations presented in interstate and intrastate commerce:

1. An activity is concerned entirely in interstate commerce.

2. An activity is concerned entirely in intrastate commerce.

3. The activities are concerned with both interstate and intrastate commerce.

The third situation is the one giving trouble and the one that gave rise to such cases as *New York Central R. Co.* v. *James Winfield,* 244 U. S. 147, 37 S. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139, and the cases following the position there taken by the Supreme Court of the United States. Justice Brandeis and Justice Clark dissented from the prevailing opinion in that case and the case of *Erie R. Co.* v. *Winfield,* 244 U. S. 170, 37 S. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662, decided at about the same time. It is needless to say that I concur in the dissenting opinion of Mr. Justice Brandeis. As to the third situation above stated, viz., where there are concerned both interstate and intrastate interests, it is contra to the facts, that neither law nor decision nor declaration can change, to say that when an activity is one such as a locomotive pulling two cars, one loaded entirely with intrastate commodities and the other loaded entirely with interstate commodities, all the commodities are either intrastate or interstate. The unchangeable fact is that the locomotive and those aiding in its operation and of the movement of the two cars are engaged in both intrastate commerce and interstate commerce. If the locomotive drops the interstate car at its destination and proceeds with its intrastate load only it

becomes intrastate activity. Why should it be said that while both cars are in the train that one form of commerce should exclude the other?

Aside from the question of whether it may be characterized as interstate or intrastate or both at the same time, what is there about the situation that should be carried into the field of jurisdiction? We talk about "preempting the whole field," which is a fine vigorous phrase with an agricultural implication but what is there about it that pushes out of that field either one or the other of the jurisdictions when there is no conflict or duplication of action or right of action?

Before the Federal Employers' Liability Act is applicable to one engaged in an employment two elements must concur: (1) That the employee must be engaged in interstate commerce. (2) That the employer was negligent. So if the employer was not negligent and the injury arose out of or in the course of the employment why should the courts or national Congress say or attempt to say that the state might not be permitted to allow the injured or his dependents something to relieve his or their suffering, loss of earning capacity or resultant dependent condition under a state law or to provide for the support or maintenance of its injured or incapacitated citizens?

The Workmen's Compensation Act has a contractual basis. It is more nearly analogous to a contract of insurance for the benefit of a third party than a liability arising out of the fault of the employer. Frequently an employee carries on his own account insurance independent of that provided by the Workmen's Compensation Act. The employer and the State Insurance Fund contract for the benefit of employer and protection of employees or their dependents in case of accident arising out of or in the course of employment resulting in injury or death. It is a matter of common knowledge that employers and employees often carry what is known as group insurance, the premiums upon which is

contributed to by both employer and employee. These contracts are not burdens upon interstate commerce.

The burden of caring for dependents, the crippled, maimed, or incompetents rendered so because of industrial accidents and injuries is essentially a state burden. That the Congress of the United States could provide for the care of those whose incapacities arise out of activities in interstate commerce may be granted. At the present time, it has not been done. When, however, we get one step farther removed and have to deal with injuries for which the employer is not responsible as in cases like the present one (interstate commerce but no negligence) and the responsibility rests upon a third party who is or may be unable or unwilling to respond the irony of the situation becomes intense. Under the exclusive construction given the Federal Employers' Liability Act the protection provided by the employer and the state is denied the injured employee and his dependents. Thus a protective measure becomes a weapon barring the relief that should be given.

For wrongful acts and injuries inflicted by third parties the Workmen's Compensation Act provides (Section 42-1-58, Revised Statutes of Utah 1933) :

"When any injury for which compensation is payable under this title shall have been caused by the wrongful act of a third person, the injured employee, or in case of death his dependents, may at their option claim compensation under this title or have their action for damages against such third person; and, if compensation is claimed and awarded, the employer or insurance carrier having paid the compensation shall be subrogated to the rights of such employee or his dependents to recover against such third person; provided, if such recovery shall be in excess of the amount of the compensation awarded and paid, then such excess, less the reasonable expenses of the action, shall be paid to the employee or his dependents."

Congress is by the Constitution granted the power "To regulate Commerce with the foreign Nations, and among the several States, and with the Indian Tribes." Art. 1, Sec. 8, cl. 3, U. S. C. A. Likewise "The enumeration in the Con-

stitution, of certain rights, shall not be construed to deny or disparage others retained by the people." Amendment 9, Constitution of The United States. Also, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Amendment 10, Constitution of the United States. If the Workmen's Compensation Act lays an objectional burden upon interstate commerce then as to such act or parts of it, it must go by the boards. Such has not been the reason for denying the administrative tribunal's jurisdiction. The multitude of cases decided have struggled with varying success in determining whether the employee at the time of the injury was engaged in interstate commerce. If as shown by the evidence the activity at the time of the injury showed that the advancement, hindrance or interest of both intrastate and interstate commerce were concerned, the intrastate activity was swept aside. At times there has been a balancing of facts and sometimes the scales tip one way sometimes the other. The Federal Employers' Liability Act was enacted before the adoption of most of the Workmen's Compensation Acts. In order to carry the protective features as far as possible the construction indicated has been adopted. That an employee was, and in the nature of employment must be, engaged in both at the same time has not been discussed in so far as we are advised. That the employee is at one time engaged in intrastate commerce and at another in interstate commerce has developed into determining the predominating element of his activity with attenuated extension on the interstate commerce side growing out of the overshadowing interstate element. The dual activity has by certain fictions, created a single activity out of a dual one.

Under Section 42-1-40 (2) Revised Statutes of Utah 1933, "Every person, firm and private corporation, including every public utility, having in service three or more workmen or operatives regularly employed in the same business, or in or about the same establishment, under any con-

tract of hire, express or implied, oral or written," with certain exceptions not pertinent here, is an employer subject to the provisions of the act. And every employee mentioned in section 42-1-41, who is injured and his dependents as provided by section 42-1-43, are entitled to compensation under the act. Employers and insurers are protected under the act against all third party injuries inflicted upon their employees. The Workmen's Compensation Act lays no objectional burden upon interstate commerce. It imposes no conditions or limitations thereon. It does not hinder or delay or in any way interfere with the movement of anything in interstate commerce nor does it conflict with any Federal regulations relating thereto. Why then should an employee injured by accident arising out of or in the course of his employment be denied relief under the Act in instances whether in interstate or intrastate commerce when the injury is inflicted by a third party? For the reasons herein and as heretofore stated I dissent.

LARSON, Justice.

I concur in the views expressed by Mr. Chief Justice MOFFAT in his dissenting opinion.