MISSOURI, K. & T. RY. CO. OF TEXAS v. FESMIRE.

(Court of Civil Appeals of Texas. Dallas. June 22, 1912. Rehearing Denied Oct. 12, 1912.)

1. COMMERCE (§ 27*)—INTERSTATE COMMERCE —WHAT CONSTITUTES.
   In an action against a railroad company for the wrongful death of a brakeman on its train which carried water to a tank within the state, the mere fact that some of the company's engines which took water at this tank pulled trains engaged in interstate commerce did not make the train on which deceased worked one engaged in interstate commerce, so as to make the federal statute govern the cause of action.
   [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

2. TRIAL (§ 125*)—ARGUMENTS OF COUNSEL— IMPROPER ARGUMENT.
   In an action against a railroad company for wrongful death, where defendant's attorney in his argument claimed that the jury should allow plaintiff only such sum as, placed at 8 per cent. per annum interest, would annually

earn the amount contributed by deceased to plaintiff, plaintiff's attorney could properly reply that plaintiff could not obtain 8 per cent., and that part of the capital would be consumed in the payment of attorney's fees, closing with the statement that plaintiff was entitled to recover such amount as the present worth of what she could have reasonably expected her deceased husband to have contributed to her had he lived; such argument not being calculated to inflame the minds and arouse the passions of the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 303–307; Dec. Dig. § 125.*]

3. APPEAL AND ERROR (§ 302*)—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.

Where neither the motion for new trial nor the assignment that the verdict of the jury in an action for wrongful death was grossly excessive specified wherein the verdict was excessive, the assignment of error cannot be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1744–1752; Dec. Dig. § 302.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by Mrs. Nolia Fesmire against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

Alex. S. Coke and A. H. McKnight, both of Dallas, and Head, Smith, Hare & Head, of Sherman, for appellant. Wolfe, Maxey, Wood & Haven, of Sherman, for appellee.

RASBURY, J. This is an appeal from a judgment of the district court of Grayson county, entered upon the verdict of a jury awarding appellee $15,000 damages for the death of her husband, Joseph W. Fesmire, while in the discharge of his duties as an employé of appellant. Fesmire, at the time he lost his life, was head brakeman upon a water train. This train loaded with water at Honey Springs in Dallas county, Tex., and was hauled to and unloaded at a tank on appellant's line of railway in Rockwall county, Tex.; the water being subsequently pumped into the tank. The water so hauled and subsequently pumped into the tank was for the use of engines passing over the road at this point. While engaged in hauling water as outlined between the points named, appellant's engine pulling the train exploded, and killed Fesmire. Judgment was also sought for the benefit of Fesmire's father, but against whom the trial court instructed a verdict, and of which action no complaint is made.

[1] Appellant's first assignment of error complains of the action of the trial court in refusing to instruct a verdict against the appellee, and urges in that connection that it was entitled to an instructed verdict, for the reason that the evidence shows that the water train upon which Fesmire was employed was engaged in interstate commerce, in that the water which the train was hauling might be used to supply trains hauling interstate

traffic, and that we should take judicial cognizance of that fact, and hold as a consequence that the suit will be controlled by the provisions of the federal Employer's Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), which requires suits similar to the one at bar to be brought by the "personal representatives" of the deceased, which as used in the act means "executors or administrators." In this connection appellant admits that the record fails to show that the water which was being hauled by the train upon which Fesmire was killed was to be used in interstate commerce, but argues that we should, as stated, take judicial cognizance of the fact that appellant is engaged in interstate commerce, and that, having taken such cognizance, the presumption as much arises that the water emptied into the tank after its delivery on the ground by the train crew will be used in the boilers of engines pulling trains engaged in interstate commerce, as that it will not be so used. If this is correct, is it not also true that we must take judicial cognizance of the fact that appellant is also engaged in intrastate commerce, and does not such presumption obtain as strongly as that Fesmire was engaged in interstate employment? However, conceding that we may take judicial cognizance of the fact that appellant was engaged in both interstate and intrastate business, does that concession justify us under the facts in this case in holding that it was interstate traffic for the reason that another employé would at another time turn the water thus hauled and stored into the boiler of an engine that might perhaps be hauling a train of freight cars that had therein freight from an interstate point or a passenger train that had thereon passengers from an interstate point? It occurs to us that Fesmire was essentially not engaged in interstate commerce. The duties he was performing were inconsistent with the primary meaning of the term. What he did served no interstate traveler or shipper. His duties were those of a brakeman on a train that hauled water from a point in Dallas county to a point in Rockwall county. If it be conceded that the water he was helping haul might ultimately be used by some train passing that point, yet the proof shows that yet another employé must pump the water into the elevated tank before it could be used by any passing train. If this be interstate traffic, what, then, is intrastate traffic? When the train crew loaded the water on the cars at Honey Springs in Dallas county and unloaded same in Rockwall county, their duty was fulfilled, yet as unloaded no train could use the water until it was by some process pumped into the elevated tank and from thence into a passing engine; and since the record fails to sustain the claim that the water was to be used for interstate commerce,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

and because in our opinion, even though the water so hauled might at some time be used by a train so engaged, it could not in law be deduced therefrom that Fesmire was employed on a train engaged in any sense in such commerce, we conclude the assignment of error is not sound, and the same is overruled.

[2] The second assignment of error complains of certain alleged improper argument by appellee's counsel which it is urged was calculated to inflame the minds and passions of the jury, and thereby induce the jury to return an excessive verdict. Appellee contends the argument was not only not improper, but, if so, that it was invited by the preceding argument of appellant's counsel. Counsel for appellant argued to the jury that they should allow appellee only such sum as placed at 8 per cent. per annum interest would earn annually the amount contributed by deceased to appellee which counsel placed at $480 per annum, and which would result in a verdict of $6,000, and stated in his argument that it was a matter of common knowledge that banks loaned money at 8 per cent. The reply to this, in substance, was that it would be unfair to appellee since in order to loan her money it would be necessary for her to employ counsel which would involve expense and because banks would not pay over 4 per cent., or, if she invested in government bonds, they would only pay about 3 per cent., and that expense of attorney's fees would cost her half of what she could get as interest. The bill of exception reserving the point was qualified by the presiding judge who states that, after the interruption, exception, and action of the court, counsel for appellee proceeded as follows: "But, as I said to you, gentlemen, this is not the proper basis for calculation in reaching your verdict. Under the law, if plaintiff is entitled to recover such amount as the present worth of what she could have reasonably expected that her deceased husband would have contributed to her had she lived. In arriving at this amount you will consider the life expectancy of the deceased, his earning capacity, and the contribution he made to the plaintiff. That was the purpose for which the testimony as to his life expectancy, earnings, and contributions was admitted before you. There was no testimony introduced before you as to any interest, and, if it had been a proper basis of calculation, there would have been introduced before you evidence as to the rate of interest that money cound have been loaned for," etc. We are unable to see anything in the remarks of counsel, quoted above, calculated to inflame the minds or arouse the passions of the jury. Appellant was contending that an award of $6,000 placed at interest would return an amount equal to the contributions of appellee's husband, while appellee's counsel in response to that argument contended that such sum would be insufficient, for the reason that appellee would be unable to secure 8 per cent., interest and that whatever sum she received as interest on the award would be largely reduced by the expense of seeing it safely loaned. There was no evidence to sustain the discussion of counsel on either side relative to what rate of interest appellee could command for the use of any money she might recover from appellant. It was but the matching of the opinions of counsel, and it is inconceivable that this dispute between counsel was calculated to inflame the minds and arouse the passions of the jury. The negligence or fault of either litigant concerning the matter which the jury was to pass upon was not under discussion. The cases cited by appellant under this assignment have been carefully examined, and, while they present and affirm established rules of law, they are not applicable to the instant case. In the cases cited, the improper remarks were directed to the attitude of one or the other party in relation to the subject-matter of the suit, while in the case at bar the remarks related to a suppositious matter in dispute between counsel not disclosed by the evidence and not calculated by its very nature to excite or inflame the minds of the jurors.

[3] The third assignment of error is that the verdict of the jury is grossly excessive in amount. Appellee objects to the consideration of this assignment because it is too general, and because the excessiveness of the verdict is improperly presented in the assignment and the motion for new trial, in that both fail to specify wherein the verdict is excessive. The objection is well taken, since the question sought to be raised is a question of fact, and, being such a question, the attention of the court below should have been specifically called to the insufficiency thereof in order that the trial court might correct the error. Railway Co. v. Matlock, 141 S. W. 1072; White v. Wadlington, 78 Tex. 159, 14 S. W. 296; City of Galveston v. Devlin, 84 Tex. 326, 19 S. W. 395; Railway Co. v. McVey, 81 S. W. 1001; Railway Co. v. Scharbauer, 52 S. W. 590; Consolidated Co. v. Conring, 33 S. W. 547.

Finding no reversible error in the record, the judgment of the court below is affirmed.