JAMES I. PIERSON, PLAINTIFF IN ERROR, v. NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY, DEFENDANT IN ERROR.

Submitted July 8, 1912—Decided November 18, 1912.

1. The fact that a verdict has been directed by a trial court upon a ground which is untenable, does not of itself justify a reversal of the judicial action by an appellate tribunal. The question to be determined upon review is the propriety of the judicial action, not the soundness of the reason which prompted it.
2. The work of installing new rails in a railroad track, which is used sometimes in interstate and sometimes in intrastate transportation, is not an engaging in commerce but a preparation for engaging therein in the future; and an employe of a railroad company who is injured while doing such work does not suffer injury "while employed by his master in interstate commerce," within the meaning of the first section of the federal Employers' Liability act of April 22d, 1908.

On error to the Supreme Court.

For the plaintiff in error, *Coult & Dolan.*

For the defendant in error, *George S. Hobart.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action was brought to recover damages for injuries received by the plaintiff while engaged in the service of the defendant company. The latter's liability is rested entirely upon the federal Employers' Liability act of April 22d, 1908.

The material facts in the case (and they are undisputed) are as follows: The defendant corporation is the owner and operator of a railroad that, to some extent, is used in interstate commerce, and a portion of which is located in Sussex county, in this state. At the time of the happening of the accident to the plaintiff the company was engaged in removing old rails from its track, and replacing them with new ones,

at a .point between Beaver Lake and Ogdensburg, both of which places are located in that county. These new rails had been purchased by the defendant from the Buffalo Steel Company of Buffalo, New York, and were shipped from the latter place to Beaver Lake, part of the distance over the line of the Erie Railroad Company, and the rest of the way over that of the defendant. They remained at Beaver Lake some three or four. days after their arrival there and upon the cars on which they .had been carried from Buffalo. At the expiration of that time these cars were attached to an engine and hauled down to the place where the new rails were to be put in. Upon reaching that place the rails were unloaded from the cars and laid on the track edge by a gang of men—fourteen in number—of which the plaintiff was a member. While one of the rails was being lifted out of the car by these fourteen men, and while it was being held in the hands of all of them, the end of it furthest from where the plaintiff was standing was dropped. His hold upon the other end was thereby broken, and the rail fell upon his foot, crushing it so badly that it became necessary to amputate one of his toes.

Upon the case thus made the direction of a verdict in favor of the defendant was asked upon two grounds—*first,* because there was no proof of the circumstances under which the men having hold of the end of the rail furthest from the plaintiff dropped it, and, consequently, nothing upon which an inference of negligence on their part could .be predicated, and *second,* because, even if the dropping of the rail raised a presumption of negligence on the part of the plaintiff's fellow employes, the facts did not bring the case within the purview of the Federal Employers' Liability act, which imposes liability under the conditions therein specified upon a master for injuries received by a servant through the carelessness of a fellow-servant. The motion was granted; the ruling being put upon the ground that no negligence on the part of the plaintiff's fellow-servants was shown. On this ruling the plaintiff now assigns error.

The question to be determined is whether the motion to direct a verdict for the defendant was properly allowed upon

either of the grounds advanced in support of it; for, if it was, the fact that one of the grounds was untenable, and that this ground was the one upon which the ruling was rested, is immaterial. It is the judicial action, and not the soundness of the reason which prompted it, that is under review.

Without determining whether the facts recited made the question of the negligence of plaintiff's fellow-servants one for the jury, in case it became material—a matter upon which the members of the court are not agreed—we take up the consideration of the applicability of the federal statute to these facts.

On June 11th, 1906, congress passed "An act relating to liability of common carriers in the District of Columbia and territories, and common carriers engaged in commerce between the states, and between the states and foreign nations, to their employes." By the first section of this statute it was enacted that "every common carrier engaged in trade or commerce in the District of Columbia, or in any territory of the United States, or between the several states, or between one territory and another, or between any territory or territories and any state or states, or the District of Columbia, or with foreign nations, or between the District of Columbia and any state or states, or foreign nations, shall be liable to any of its employes, or in case of his death to his personal representative * * * for all damages which may result from the negligence of any of its officers, agents or employes," &c. The following year the validity of this statute was before the United States Supreme Court for its consideration in the *Employers' Liability Cases,* 207 *U. S.* 463. That court held that the statute deals with all the concerns of the individuals or corporations to which it relates if they engage as common carriers in trade or commerce between the states, &c., and does not confine itself to the interstate commerce business which may be done by such persons; that, stated in another form, the statute is addressed to the individual or corporations who are engaged in interstate commerce, and is not confined solely to regulating the interstate commerce business which such persons may do—that is, it regulates the persons because they

engage in interstate commerce, and does not alone regulate the
business of interstate commerce. So holding, it considered
that the act, being addressed to all common carriers engaged
in interstate commerce, and imposing a liability upon them
in favor of any of their employes, without qualification or
restriction as to the business in which the carriers or their
employes may be engaged at the time of the injury, included
subjects wholly outside of the power of congress to regulate
commerce, and that, as it depended for its sanction wholly
upon that authority, it was repugnant to the constitution and
could not be enforced. With this judicial declaration in mind
congress passed the act upon which the plaintiff bases his
right of recovery. Its title is, "An act relating to liability of
common carriers by railroad to their employes in certain
cases." By its first section it is enacted "that every common
carrier by railroad while engaging in commerce between any
of the several states or territories, or between any of the states
and territories, or between the District of Columbia and any
of the states or territories, or between the District of Columbia
or any of the states or territories and any foreign nation or
nations, shall be liable in damages to any person suffering in-
jury while he is employed by such carrier in such commerce,
or, in case of the death of such employe to his or her personal
'representative," &c. In passing this act congress manifestly
intended to, and did, in fact, eliminate those features of the
earlier statute which, in the judgment of the United States
Supreme Court, rendered it unconstitutional. By it liability
is imposed upon a common carrier by railroad, in case it is
engaged .in the business of interstate commerce, but only
*while engaging* in such business at the time of the happening
of an accident which produces injury to an employe. And it
does not impose such liability even when the carrier is so en-
gaged, unless the person injured is at the time of the occur-
rence of the accident himself employed by the carrier in such
commerce. In other words, the purpose of the statute is "to
secure the safety of interstate transportation and of those who
are employed therein." *Mondou* v. *New York, New Haven
and Hartford Railroad Co.,* 223 *U. S.* 1, 51. . As was said by

Mr. Justice Buffington in *Pedersen* v. *Delaware. Lackawanna and Western Railroad Co.*, 197 *Fed. Rep.* 537, speaking for the United States Circuit Court of Appeals (third circuit) : "Interstate transportation by the carrier is the act which constitutes the engaging of the statute; and the persons for whose benefit the liability is created are those employes who have a real and substantial part in effecting such transportation. The final test is the relation of the employe's work to interstate transportation at the time of the injury."

Applying this test the direction of a verdict for the defendant was proper. The transportation of the rails from Buffalo to Beaver Lake was interstate commerce, at least until they were turned over to the defendant company *en route* for further carriage; but when they reached their destination at Beaver Lake they ceased to be an object of such commerce. In afterward transporting them from Beaver Lake to the point where they were to be used in replacement of the old rails, the defendant company was not engaged in commerce at all, we think—certainly not in interstate commerce. Nor was the work of installing the new rails in the track an engaging in interstate commerce. The repairing of an instrument of commerce, which is used sometimes in interstate and sometimes in intrastate transportation, whether it be the roadbed of a railroad, or a car or an engine which is run over it, is not an *engaging* in commerce, but a preparation for engaging therein in the future. *Pedersen* v. *Delaware, Lackawanna and Western Railroad Co.*, *supra.* This being so, it is clear that the plaintiff did not receive his injury while he was employed by the defendant in such commerce.

The judgment under review must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY, JJ. 14.

*For reversal*—None.