PETERS v. INDUSTRIAL COMMISSION OF UTAH

No. 4740.   Decided April 19, 1929.   (277 P. 408.)

*Hurd & Hurd,* of Salt Lake City, for plaintiff.

*George P. Parker,* Atty. Gen., and *M. Logan Rich,* Asst. Atty. Gen., for defendant.

ELIAS HANSEN, J.

In this proceeding John D. Peters seeks to have vacated and set aside an order of the Industrial Commission of Utah whereby his application for an award of compensation was dismissed. The application was dismissed, because, as found by the commission (1) at the time of his injury Peters was engaged in interstate commerce; (2) he failed to file his application for compensation within one year after he sustained the injury complained of.

The Denver & Rio Grande Western Railroad Company was the employer of Peters at the time he was injured. It is resisting the payment of compensation to Peters. In this opinion John D. Peters will be referred to as the applicant, the Industrial Commission of Utah as the commission, and the Denver & Rio Grande Western Railroad Company as the company.

The applicant and the company entered into a written stipulation and filed the same with the commission whereby they agreed upon these facts: The company is, and was on the 19th day of October, 1925, a corporation engaged in interstate as well as intrastate commerce ■ in the state of Utah as a railroad common carrier. In

respect to its intrastate business the company is an employer subject to the Workmen's Compensation Act of the state of Utah (Comp. Laws 1917, § 3061 et seq., as amended.) On October 19, 1925, the applicant was employed by the company as a machinist helper in its roundhouse at Green River, Utah. At about 5:45 p. m. on October 19, 1925, the applicant sustained a personal injury caused by the explosion of a carbide generator tank connected with an acetylene cutting torch while he was engaged in his regular employment at the company's roundhouse at Green River, Utah. The acetylene cutting torch was a part of the regular equipment of the company and was used indiscriminately upon engines and cars used in interstate and intrastate commerce. At the time the tank exploded and the applicant was injured he was lighting the acetylene cutting torch by means of a burning coal oil torch. The acetylene torch was lighted for the purpose of cutting a piece of metal attached to the tank of defendant's locomotive. On the day applicant was injured a brake hanger which suspended a brake beam on one of defendant's locomotives had become broken while the engine was on its run between the Sego coal mine and Green River, Utah. When the hanger broke, the train crew suspended the brake beam by means of a heavy chain. This temporary repair enabled the engineer to run the locomotive to Green River. When the locomotive arrived at Green River, it was placed in the roundhouse for over night storage and for the repair of the broken hanger, but not for general repairs. From September 14, 1925, until after October 20, 1925, the engine was used to haul empty coal cars together with freight from Green River, Utah, to Sego, Utah, and upon the return trip from Sego to Green River it hauled loaded coal cars and other freight. Some of the freight that was hauled from Green River to Sego was shipped from within and some from without Utah. Some of the coal and other freight that was hauled from Sego to Green River was destined to points within and some destined to points without Utah. In the event that there were no cars to be

moved from Green River to Sego or from Sego to Green River, the engine did not make the trip. On October 19, 1925, loaded coal cars were moved from Sego to Green River destined to Emmett, Idaho, Yakima, Wash., Preston, Idaho, Sterling, Kan., Council Grove, Kan., and Grand Junction, Colo. On October 20, 1925, the engine hauled coal destined to Green River, Utah, Grand Junction, Colo., Topeka, Kan., Waterfall, Kan., Talum, Kan., Corwin, Kan., Tribune, Kan., St. Mories, Idaho, Preston, Idaho, Yakima, Wash., and Pocatello, Idaho. The engine was used entirely within the state of Utah. The engine was used as a switch engine on September 15, 17, and 19, of 1925. The applicant was totally disabled by reason of the injury received by him from October 19, 1925, to February 1, 1926. On February 1, 1926, the applicant returned to work for the company, and continued to work until March 27, 1926, when he secured a leave of absence. He took up his residence in California, and did not return to his employment with the company. On February 1, 1926, the company paid the applicant the sum of $400. The applicant accepted the $400 and agreed that the same should release and discharge the company from all claims that he might have against it because of his injury if it should be determined that he was engaged in interstate commerce at the time of his injury, and, if it should be determined that he was engaged in intrastate commerce at the time of his injury, the $400 should apply on any compensation that may be awarded to him. Other facts are stipulated, but it will not be necessary to recite them in this opinion.

The application for compensation was filed with the commission on December 10, 1926. The deposition of the applicant taken in the state of California is a part of the record brought here for review. The applicant testified that he had been employed at the roundhouse at Green River, Utah, for a period of eight years before he was injured; that he was injured at about 5:30 or 5:45 in the afternoon of October 19, 1925; that he was ordered by H. J. Sturgis to repair the engine; that he "was going at it with a hammer and

chisel"; that Sturgis said, "No, we will take the torch and cut it with the torch." The applicant further testified that the engine they were about to repair when he was injured was the only engine kept at Green River; that it was used to do the switching for trains 61, 62, and 65; that these trains were freight trains operating between Denver, Colo., and Salt Lake City, Utah; that it was necessary to repair the engine at once so that it could be used to do the switching for train 61. The remainder of the testimony of the applicant is not material for a determination of the questions presented for review.

Upon substantially the foregoing facts the applicant contends that the commission has jurisdiction to award him compensation for his injuries. The company contends that the applicant was engaged in interstate commerce at the time he was injured, and therefore the commission is without jurisdiction to award compensation. It is apparently conceded that, if the applicant was engaged in interstate commerce at the time he was injured, the commission has no jurisdiction to grant an award of compensation. That such is the law is well settled. *Mondou* v. *New York, N. H. & H. R. Co.*, 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, 1 N. C. C. A. 875; *Michigan Cent. R. Co.* v. *Vreeland*, 227 U. S. 59, 33 S. Ct. 192 57 L. Ed. 417, Ann. Cas. 1914C, 176; *Seaboard Air Line Ry. Co.* v. *Horton*, 233 U. S. 501, 34 S. Ct. 635, 58 L. Ed. 1068, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475, 8 N. C. C. A. 834; *New York Central R. R. Co.* v. *Winfield*, 244 U. S. 147, 37 S. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139, 14 N. C. C. A. 680.

The applicant contends that he was not engaged in interstate commerce at the time he was injured because (1) the engine he was about to repair was withdrawn from interstate commerce and all commerce; (2) lighting the acetylene cutting torch was too remotely connected with interstate commerce to be regarded as a part thereof. The following cases are cited in support of the first proposition:

*Delaware, L. & W. R. Co.* v. *Yurkonis,* 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 139, where it is held that "the fact that coal may be used in interstate commerce after being mined and transported does not make an injury sustained by the miner an injury sustained while engaged in interstate commerce"; *Shanks* v. *Delaware, L. & W. R. Co.,* 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797, where it is held that "a railroad company, which is engaged in both interstate and intrastate transportation, conducts a machine shop for repairing locomotives used in such transportation, an employee is not engaged in interstate commerce while taking down and putting up fixtures in such machine shop, and cannot, if injured while so doing, maintain an action under the [Federal] Employers' Liability Act [45 USCA §§ 51-59], even though on other occasions his employment relates to interstate commerce"; *Chicago B. & Q. R. Co.* v. *Harrington,* 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941, where it is held "an employee of a carrier engaged in removing coal from storage tracks to coal chutes is not engaged in interstate commerce, even though the coal had been previously brought from another state and was to be used by locomotives in interstate hauls"; *Erie R. R. Co.* v. *Welsh,* 242 U. S. 303, 37 S. Ct. 116, 61 L. Ed. 319, where it is held that an "employee, subject to be employed in either interstate or intrastate commerce as directed by a superior, was injured while in quest of orders, and, but for the injury, would have received orders requiring him immediately to make up an interstate train," supports a finding that he was not engaged in interstate commerce; *Minneapolis & St. L. R. R. Co.* v. *Winters,* 242 U. S. 353, 37 S. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54, where it is held that an employee was not engaged in interstate commerce who was injured while repairing an engine which had been "used in interstate commerce before the injury and was so used afterwards, but there was nothing to show that it was permanently or specially devoted to such commerce, or assigned to it at the time"; *Hines* v. *Industrial Acc. Comm.*

*et al.*, 184 Cal. 1, 192 P. 859, 14 A. L. R. 720, where it is held that "a machinist helper engaged in repairing in a round-house a switch engine which had been temporarily withdrawn from service for repairs, and which, when in service, was engaged in both interstate and intrastate commerce, is not within the protection of the Federal Employers' Liability Act."

The company cites the following cases in support of its contention that the repairing of the engine in the instant case was within the Federal Employers' Liability Act: *North Carolina Ry. Co.* v. *Zachary*, 232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591, where it is held that "hauling empty cars from one state to another is interstate commerce within the meaning of the Federal Employers' Liability Act," also that "acts of an employee in preparing an engine for a trip to move freight in interstate commerce although done prior to the actual coupling up of the interstate cars are acts done while engaged in interstate commerce"; *New York, C. & H. R. R. Co.* v. *Carr*, 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298, where it is held that a "brakeman on an intersate car in a train consisting of both intrastate and intersate cars who is engaged in cutting out the intrastate car so that the train may proceed on its interstate business, is while so doing engaged and employed in interstate commerce"; *Baltimore & O. R. R. Co.* v. *Kast* (C. C. A.) 299 F. 419, where it is held that "a machinist and his helper, who at the time of the helper's injury were engaged in making running repairs to an engine in use in interstate transportation, while it was laying off between runs at a roundhouse, held employed in interstate commerce"; *Baltimore & O. R. R. Co.* v. *Flechtner* (C. C. A.) 300 F. 318, where it is held that a brakeman employed in a switchyard and when injured was "assisting in making up a train consisting of both interstate and intrastate cars, by seeing that all were properly coupled" was engaged in "interstate commerce"; *Healy* v. *Chicago, M. & St. P. Ry. Co.*, 164 Minn. 353, 205 N. W. 260, where it is held that a switchman was

engaged in interstate commerce when he was injured while proceeding to get some intrastate cars to put into a string of interstate cars.

The law is well established that, if an employee is injured while performing work which is a part of interstate transportation or so closely related to it as to be practically a part thereof, then such injured employee is entitled to the benefit of the Federal Employers' Liability Act. If he is not within the act, he may not proceed under it. In the instant case it appears from the facts stipulated that the engine which was being repaired was engaged in interstate commerce the day before and also the day after the applicant was injured. It further appears from the applicant's testimony that there was no other engine that could be used to do the switching for the interstate freight trains when they arrived at Green River; that it was necessary to repair the engine at once so that it could be kept in service. These facts are sufficient to support a finding that the repairs to the brake hanger on the engine were so closely related to interstate transportation as to be a part thereof. The facts in this case are not distinguishable from the facts in some of the cases cited by counsel for the company, especially the case of *Baltimore & O. R. R. Co.* v. *Kast,* supra.

The cases most nearly in point among the citations of counsel for the applicant are *Minneapolis & St. L. R. R. Co.* v. *Winters* and *Hines* v. *Industrial Acc. Comm.,* supra. In these cases, however, it does not appear that there was a necessity to immediately repair the engines so that they might be used to facilitate interstate transportation.

It is further urged on behalf of the applicant that he was not engaged in repairing the engine, but that he was engaged in lighting the acetylene cutting torch when he was injured. In support of such contention, the case of *Denver & R. G. W. R. Co.* v. *Industrial Comm.,* 60 Utah 95, 206 P. 1103, is cited and relied on. In that case it is held that a "railroad blacksmith helper, who was injured while re-

pairing chisel for work on repair of engine temporarily withdrawn from service and which immediately before and after the accident was used in intrastate commerce by railroad engaged in both intrastate and interstate commerce, was not engaged in interstate commerce at the time of accident, as the instrumentality upon which he was working was not devoted to any particular commerce." The facts in this case do not bring it within the reasons which form the basis of the conclusion reached in the case of *Denver & R. G. W. R. Co.* v. *Industrial Comm.*, supra. In that case the repair of the chisel was necessary before it could be used in either interstate or intrastate commerce; in the instant case the sole purpose of lighting the acetylene cutting torch was to repair the broken brake hanger on the engine. In the former case the engine being repaired was withdrawn from service; in this case the engine was being repaired so that it could be put into immediate service in interstate commerce.

We can see no escape from the conclusion that the lighting of the acetylene cutting torch was a part of the work of repairing the engine it served and could serve, so far as appears, no other purpose. The rule announced in the following cases supports such view: *Pedersen* v. *Delaware, L. & W. R. Co.*, 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125; *Central R. Co.* v. *Sharkey* (C. C. A.) 259 F. 144; *Baltimore & O. R. Co.* v. *Kast* (C. C. A.) 299 F. 419; *Southern R. Co.* v. *Puckett*, 244 U. S. 571, 37 S. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69; *St. Louis, S. F. & T. Ry. Co.* v. *Seale*, 229 U. S. 156, 33 S. Ct. 651, 57 L. Ed. 1129; *Kinzell* v. *Chicago, M. & St. P. Ry. Co.*, 250 U. S. 130, 39 S. Ct. 412, 63 L. Ed. 893; *Erie R. R. Co.* v. *Winfield*, 244 U. S. 170, 37 S. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662; *Southern Ry. Co.* v. *Lloyd*, 239 U. S. 496, 36 S. Ct. 210, 60 L. Ed. 402.

The applicant was engaged in interstate commerce at the time he was injured. It thus becomes unnecessary to pass upon the question of whether or not the claim of the appli-

cant is barred by the statute of limitations. We express no opinion on that phase of this case.

The order dismissing the application is affirmed.

CHERRY, C. J., and STRAUP, EPHRAIM HANSON, and FOLLAND, JJ., concur.