STEWARD et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4978. Decided October 26, 1932. (15 P. [2d] 334.)

*P. C. Evans,* of Salt Lake City, for plaintiffs.

*Geo. P. Parker,* Atty. Gen., and *Geo. H. Smith, R. B. Porter,* and *W. Hal Farr,* all of Salt Lake City, for defendants.

FOLLAND, J.

This is a proceeding to review a decision of the Industrial Commission of Utah denying compensation. Plaintiffs, the widow and children of Charles E. Steward, allege that Steward died as a result of injuries sustained in the course of his employment by the Oregon Short Line Railroad Company, a self-insurer. The defendant employer denied liability on two grounds, namely, that the employee was engaged in interstate commerce at the time of his alleged injuries and hence the Industrial Commission was without jurisdiction to make an award, and that the employee did not meet with any accident causing injury but died as a result of disease which was not caused or contributed to by any accident or injury. The Industrial Commission made a finding to the effect that the employee was engaged in interstate commerce at the time of the alleged injuries, concluded it was without jurisdiction to make an award, and thereupon denied compensation. No finding was made by the commission on the other question involved. The only question on this review is whether or not the finding that the employee was engaged in interstate commerce at the time of the alleged injury is supported by the evidence.

The evidence is brief and without conflict. The defendant operates a railroad in Utah, Idaho, and other states and is engaged in interstate and intrastate commerce. It has installed and maintains along its interstate railroad certain signal devices known as "block signals," which are used for the purpose of safely operating both its interstate and intrastate trains. The block signals are operated by means of electric current supplied by storage batteries.

The deceased employee worked under the direction of the signal supervisor of the railroad company. His duty was to gather up, recharge, and again place in position in the block signal system the storage batteries used to operate such signals on the main line of the railroad between Salt Lake City, Utah, and Oxford, Idaho. There were 290 batteries in use between these points, and each battery was changed and recharged every 35 days. On each Monday the employee went out on the railroad line with the battery car and took a certain number of charged batteries. He placed these in position in the various block signals and took up a similar number of used batteries for the purpose of recharging them. These used batteries he took to the shop in Salt Lake City where, during the balance of the week, he would recharge the batteries. On each Saturday he would load the charged batteries in the battery car and on the Monday following would go out on the road with the charged batteries and exchange them for used batteries in the various block signals and return with the used batteries and recharge them as before. His last day of work was a Saturday. On that day he had finished charging eight batteries which he had taken up the previous Monday, and loaded them in the battery car in readiness to be taken out on the road the following Monday morning. These batteries were taken out and placed in the block signal system by another employee. Steward took ill with pneumonia and died a few days later. It is claimed his illness was caused or contributed to by the irritating fumes given off by the batteries in process of charging.

Where an employee is injured while engaged in work directly relating to interstate commerce, the Industrial Commission has no jurisdiction to award compensation, since the Federal Employers' Liability Act (45 USCA §§ 51-59) furnishes the exclusive remedy. The general test as to whether an employee is subject to the provisions of the Federal Employers' Liability

Act is usually stated to be that if at the time of injury he was engaged in interstate commerce, or the work was directly related to such commerce or so closely connected with it as to be a part of interstate commerce, then he is subject to the act. *Conway* v. *Southern Pacific Company*, 67 Utah 464, 248 P. 115, 49 A. L. R. 1316; *Peters* v. *Industrial Commission*, 74 Utah 140, 277 P. 408. In applying the test specifically to facts similar to those in the case at hand, the rule adopted is that an employee is employed in interstate commerce when making repairs, working upon, or keeping in usable condition instrumentalities used in interstate commerce. *Shanks* v. *Delaware, Lackawanna & W. R. Co.*, 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; *Southern Pacific Co.* v. *Industrial Commission*, 71 Utah 248, 264 P. 965; *Coal & Coke Ry. Co.* v. *Deal* (C. C. A.) 231 F. 604.

It is conceded by plaintiff, and could not well be denied, that the storage batteries were used in interstate commerce when operating the block signal system on the main line railroad. They were instrumentalities used in interstate commerce. There can be no serious question that the work of installing and removing the batteries from their position along the railroad tracks would be interstate in character. *Pedersen* v. *Delaware, Lackawanna & W. R. Co.*, 229 U. S. 146, 33 S. Ct. 648, 650, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; *Grow* v. *O. S. L. R. Co.*, 44 Utah 160, 138 P. 398, Ann. Cas. 1915B, 481; *Saxton* v. *El Paso & S. W. R. R.*, 21 Ariz. 323, 188 P. 257; *Halley* v. *Ohio Valley Elec. Ry. Co.*, 92 W. Va. 172, 114 S. E. 572.

An employee who is required to keep in repair electric signals and to direct and control the operation of intrastate and interstate trains on an interstate railroad is engaged in interstate commerce. Richey, Federal Emloyers' Liability (2d Ed.) p. 73; *Cincinnati, N. O. & T. R. R. Co.* v. *Bonham*, 130 Tenn. 435, 171 S. W. 79; *Bauchspies* v. *Central Railroad Co. of N. J.*, 287 Pa. 590, 135 A. 728.

Plaintiffs' contention is that the batteries were withdrawn from interstate commerce during the time they were in the shop being recharged and that the employee while working in the shop charging batteries was not engaged in interstate commerce and therefore was within the protection of the Workmen's Compensation Act of this state (Comp. Laws 1917, § 3061 et seq., as amended). Whether the employee's work in charging batteries was interstate commerce must be determined by reference to the test above stated and the cases decided with respect thereto. The Supreme Court of the United States has laid down no rule or test other than that stated, and measured by that test has remitted the decision of each to its particular facts.

It will be noted that the batteries were taken out from the block signal system for the specific purpose of recharging so as to be replaced in the block signal system at the end of a week. If the batteries were not kept charged the block signals would fail to operate. This work was necessary to the proper and safe operation of the interstate trains over defendant's railroad tracks. The recharging of the batteries bears analogy to the repairs on an engine when withdrawn from service and placed in the repair shop. Courts have frequently held that an engine withdrawn from service for a general overhauling loses its character as an interstate instrumentality and that one then working on it is not engaged in interstate commerce, but it is generally held that where the engine is assigned to interstate commerce and is undergoing repairs between trips or is withdrawn from service for a fixed time and for particular repairs to again be placed in interstate use after the repairs are made, that a workman making such repairs is engaged in interstate commerce. *Larkin* v. *Ind. Com. of Utah,* 60 Utah 274, 208 P. 500; *Peters* v. *Ind Com. of Utah,* 74 Utah 140, 277 P. 408; *Kuchenmeister* v. *Los Angeles & S. L. R. Co.,* 52 Utah, 116, 172 P. 725, 728; *Oglesby* v. *St. Louis-San Francisco Ry. Co.,* 318 Mo. 79, 1 S. W. (2d) 172, 175. In *Larkin* v. *Ind. Com., supra,* the injury occurred May 4th

while the employee was working on an engine withdrawn from interstate service for general repairs on April 27th. The engine remained in the shop until May 13th. The employee was held not engaged in interstate commerce while making the repairs. In *Kuchenmeister* v. *Los Angeles & S. L. R. Co.*, supra, the holding was that the employee working on engine repairs was engaged in interstate commerce. It was there said that "the plaintiff was injured while engaged in repairing an instrumentality which before the injury had been exclusively used in interstate commerce and was being repaired so as to be again used for the same purpose and was so used after the injury."

In *Peters* v. *Ind. Com.*, supra, the employee when injured was lighting an acetylene torch for the purpose of making repairs on an engine withdrawn from interstate use, not for the purpose of general repairs or overhauling, but for specific repairs to a broken brake hanger, the engine to again be used in interstate commerce. This court held the facts were sufficient to support a finding that the repairs on the brake hanger on the engine were so closely related to interstate transportation as to be a part thereof and affirmed an order of the Industrial Commission dismissing the application.

It is our duty to follow the rulings of the federal courts rather than any state court, even our own, since the question involved is the application of the congressional act and is one on which the federal courts have the ultimate right to speak. We look, therefore, to decisions of the Supreme Court of the United States. In *Industrial Accident Commission of the State of Calif.* v. *Davis,* 259 U. S. 182, 42 S. Ct. 489, 491, 66 L. Ed. 888, the Supreme Court of the United States held that an employee working on an engine which had been used in interstate transportation but withdrawn for general repairs was not within the provisions of the Federal Employers' Liability Act. Mr. Justice McKenna, who wrote the opinion, pointed out the distinctions as follows:

"We refrain from a review of our cases. They pronounce a test and illustrate it. We are called upon to apply it to the present controversy. The federal act gives redress only for injuries received in interstate commerce. But how determine the commerce? Commerce is movement, and the work and general repair shops of a railroad, and those employed in them are accessories to that movement, indeed, are necessary to it, but so are all attached to the railroad company, official, clerical or mechanical. Against such a broad generalization of relation we, however, may instantly pronounce, and successively against lesser ones, until we come to the relation of the employment to the actual operation of the instrumentalities for a distinction between commerce and no commerce. In other words, we are brought to a consideration of degrees, and the test declared, that the employee at the time of the injury must be engaged in interstate transportation or in work so closely related to it as to be practically a part of it, in order to displace state jurisdiction and make applicable the federal act. And there is a difference in the instrumentalities. In some, the tracks, bridges and roadbed and equipment in actual use, may be said to have definite character and give it to those employed upon them. But equipment out of use, withdrawn for repairs, may or may not partake of that character according to circumstances, and among the circumstances is the time taken for repairs—the duration of the withdrawal from use. Illustrations readily occur. There may be only a placement upon a sidetrack or in a roundhouse—the interruption of actual use, and the return to it, being of varying lengths of time, or there may be a removal to the repair and construction shops, a definite withdrawal from service and placement in new relations; the relations of a work shop, its employments and employees having cause in the movements that constitute commerce but not being immediate to it."

In *Oglesby* v. *St. Louis-San Francisco Ry. Co.*, supra, the Supreme Court of Missouri held an employee to be engaged in interstate commerce while making repairs on an engine used exclusively in interstate commerce and placed in the roundhouse for repairs. For this decision the court relied on and followed the case of *Ind. Acc. Com. of Calif.* v. *Davis*, last above cited. The reasoning of the Missouri court is particularly applicable to the facts before us. The court said:

"We start our determination of the question with the admission of counsel for appellant that:

" 'The engine was of a type used only upon defendant's interstate line, and while in service it was assigned only to use in interstate commerce.'

"Thus the interstate characteristic and use of the instrumentality is firmly fixed. The instrumentality (the engine) was one used only in interstate commerce. If taken out for repairs, it was to be returned to this use. This admission distinguishes this case from most cases we have read, and from all that are relied upon by appellant, and we have carefully read them. It shows that this instrumentality was one not only used solely in interstate commerce, but also its adaptability for such use, and the further fact of the fixed purpose to return it to such use after the intermission expired. Under the rule announced in this case (*Industrial Accident Commission* v. *Davis*) a case was made for the plaintiff in the present case. Within three days of the placing of the engine in the roundhouse for 'running repairs,' the husband of plaintiff was killed. The engine was temporarily there for light repairs and return to interstate commerce in 10 days—June 30th. This Davis Case is the very latest expression of our federal Supreme Court, and under the rule there announced (which rule we have quoted full above) the deceased was engaged in interstate commerce when killed."

Applying the rule stated in the Davis Case and in the Oglesby, Kuchenmeister, and Peters Cases, it would seem the facts before us bring the case within the margin of cases so closely related to interstate commerce as to be a part of it. The batteries were withdrawn for a definite period, for a definite purpose, and with a definite intent to be replaced in actual interstate service as soon as charged. They were not withdrawn generally or for an indefinite period, nor was the purpose of their repair and future use left in doubt. They were taken from actual use as part of an interstate system of signaling to be recharged, returned as soon as charged, and connected with and made a part of an interstate block signaling system. They were not withdrawn at all from interstate commerce. The whole movement by which they were taken out of the block signaling system, recharged, and returned, was one continuing transaction. It is illogical to draw a line and say the employee was engaged in interstate commerce on Monday,

but not engaged in such commerce the remainder of the week. His entire service had to do with instrumentalities of interstate commerce, the task of conditioning the batteries being so closely related to such commerce as to be a part of it.

Other decisions of the Supreme Court of the United States, which strongly support if they do not control our decision, are *Pedersen* v. *Delaware, L. & W. R. Co.*, supra; *Erie Railroad Company* v. *Collins*, 253 U. S. 77, 40 S. Ct. 450, 451, 64 L. Ed. 790; and *Erie Railroad Company* v. *Szary*, 253 U. S. 86, 40 S. Ct. 454, 64 L. Ed. 794. In *Pedersen* v. *Delaware, Lackawanna & W. R. Co.*, supra, the court held that an employee carrying materials to a bridge on an interstate railroad for the purpose of repairing a girder on the bridge was, at the time of his injury, actually engaged in interstate commerce. The court said:

"Of course, we are not here concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such.

"True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce.

"The point is made that the plaintiff was not at the time of his injury engaged in removing the old girder and inserting the new one, but was merely carrying to the place where that work was to be done some of the materials to be used therein. We think there is no merit in this. It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of the larger one, as is the case when an engineer takes his engine from the roundhouse to the track on which are the cars he is to haul in interstate commerce."

In the Collins Case the employee's duties were to attend to a signal tower and switches and also in a nearby building

to run a gasoline engine to pump water into a tank for use of locomatives operating in interstate and intrastate commerce. The injuries occurred while the employee was operating a gasoline engine pumping water. In holding that the employee was engaged in interstate commerce the court said:

"It can hardly be contended that while plaintiff was engaged in the signal tower he was not engaged in interstate commerce, though he may have on occasion signaled the approach or departure of intrastate trains. But it is contended that when he descended from the tower and went to the pumping station he put off an interstate character and took on one of intrastate quality or, it may be, was divested of both and sank into undesignated employment. A rather abrupt transition it would seem at first blush, and, if of determining influence, would subject the Employers' Liability Act to rapid changes of application, plaintiff being within it at one point of time and without it at another—within it when on the signal tower, but without it when in the pump house, though in both places being concerned with trains engaged in interstate commerce. * * *

"In the Pedersen Case it was said that the questions which naturally arise: 'Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it?' Or as said in *Shanks* v. *Delaware, Lackawanna & Western R. R. Co.*, supra, was the 'work so closely related to it (interstate commerce) as to be practically a part of it?' The answer must be in the affirmative. Plaintiff was assigned to duty in the signal tower and in the pump house and it was discharged in both on interstate commerce as well as on intrastate commerce, and there was no interval between the commerces that separated the duty, and it comes therefore within the indicated test. It may be said however, that this case is concerned exclusively with what was to be done, and was done, at the pump house. This may be true but his duty there was performed and the instrument and facilities of it were kept in readiness for use and were used on both commerces as was demanded, and the test of the cases satisfied."

In the Szary Case the employee's duty was to dry sand in stoves in a small structure near the tracks and supply it to locomotives engaged in interstate as well as intrastate transportation. He carried ashes from the stove to an ash

pan across one of the tracks and on his return was injured by a backing locomotive. The court held he was engaged in interstate commerce. In the course of the decision the court said: "We think these facts bring the case within the Collins Case and the test there deduced from prior decisions. There were attempts there, and there are attempts here, to separate the duty and assign it character by intervals of time, and distinctions between the acts of service. Indeed something is attempted to be made of an omission, or an asserted omission, in the evidence, of the kind of commerce in which the last engine served was engaged. The distinctions are too artificial for acceptance. The acts of service were too intimately related and too necessary for the final purposes to be distinguished in legal character."

On authority of the Collins and Szary Cases, the Supreme Court of Minnesota, in *Phillips* v. *Chicago & N. W. R. Co.*, 173 Minn. 169, 216 N. W. 940, 942, held that an employee of an interstate railroad is engaged in interstate commerce while repairing a pipe used in transporting sand from a drying room to a storage tank for use by locomotives engaged in such commerce on the theory that "while the apparatus, including the pipe, was no part of the highway and was not used directly in sanding locomotives, yet its use was so closely related thereto and to such commerce as to become a part thereof." The Circuit Court of Appeals of the Fourth Circuit, in *Coal & Coke Ry. Co.* v. *Deal*, 231 F. 604, 608, on authority of the Pedersen Case, held an employee, attempting to erect a telegraph pole to support wires over which messages are to be sent directing trains of a company operating in interstate commerce, in the repair of a telegraph line so used, to be engaged in interstate commerce, and stated the rule applicable as follows:

"Whenever it appears that a party injured is engaged in employment that is necessary to the maintenance of any of the instrumentalities essential to the successful operation of a road by a carrier engaged in interstate commerce, such party is deemed to be engaged in interstate commerce."

The line of distinction between when one is, or is not, engaged in interstate commerce when working on or with an article or instrumentality destined to be used in interstate commerce is even more clearly delineated when one considers the cases holding the employee is not engaged in interstate commerce. The cases cited by plaintiff furnish such an illustration. Plaintiff cites and relies on the following cases: *Hines* v. *Ind. Acc. Com.*, 184 Cal. 1, 192 P. 859, 14 A. L. R. 720; *Chicago, R. I. & P. R. Co.* v. *Cronin*, 74 Okl. 38, 176 P. 919; *Kozimko* v. *Hines* (C. C. A.) 268 F. 507; *Ruck* v. *Chicago, M. & St. P. R. Co.*, 153 Wis. 158, 140 N. W. 1074; *Sullivan* v. *Chicago, M. & St. P. R. Co.*, 163 Wis. 583, 158 N. W. 321; *Salmon* v. *Southern R. Co.*, 133 Tenn. 223, 180 S. W. 165; *Missouri, K. & T. R. Co.* v. *Watson* (Tex. Civ. App.) 195 S. W. 1177; *Southern R. Co.* v. *Pitchford*, 165 C. C. A. 330, 253 F. 736; *Missouri, K. & T. R. Co.* v. *Fesmire* (Tex. Civ. App.) 150 S. W. 201; *Illinois C. R. Co.* v. *Cousins*, 241 U. S. 641, 36 S. Ct. 446, 60 L. Ed. 1216, *reversing Cousins* v. *Illinois C. R. Co.*, 126 Minn. 172, 148 N. W. 58; *Pierson* v. *New York, S. & W. R. Co.*, 83 N. J. Law, 661, 85 A. 233; *Conway* v. *Southern Pac. Co.*, 67 Utah 464, 248 P. 115, 49 A. L. R. 1316.

In the following cases cited by plaintiffs the article with which the employee was working when injured, while destined to be used in interstate commerce, had not theretofore been so used. The article or material was being brought to the place where it thereafter could be placed in use in interstate commerce or indiscriminately in either interstate or intrastate commerce. A statement of the facts shows these cases can be readily distinguished from the situation before us. In *Sullivan* v. *Chicago, M. & St. P. R. Co.*, supra, the employee was injured by lumber stacked in the yard prior to preparation for shipment in interstate commerce. In *Salmon* v. *Southern R. Co.*, supra, the employee was injured while unloading paint to be used in painting cars used in interstate service. In *Missouri, K. & T. R.*

*Co.* v. *Watson,* supra, the employee was unloading ties to be subsequently used on either interstate of intrastate tracks or both. In *Southern R. Co.* v. *Pitchford,* supra, the employee was unloading ice from a wagon to an ice box, the ice to be thereafter used icing cars in interstate commerce. *Missouri, K. & T. R. Co.* v. *Fesmire,* supra, held a brakeman on a train used to carry water to a tank for use by engines in interstate commerce is not engaged in interstate commerce. In *Illinois C. R. Co.* v. *Cousins,* supra, the employee was wheeling coal for use in a repair shop where interstate cars are repaired. In *Pierson* v. *New York, S. & W. R. Co.,* supra, the employee carried rails to be used to replace old rails on an interstate track. In *Conway* v. *Southern Pac. Co.,* supra, the employee was injured while blasting rock in a quarry, the rock to be hauled to and used to fill a railroad grade on an interstate line. Other cases cited in plaintiffs' brief are: *Hines* v. *Ind. Com.,* where a machinist helper, engaged in repairing a switch engine, temporarily withdrawn from service for repairs, which when in service was engaged in both interstate and intrastate commerce, was held not within the operation of the Federal act. *Chicago, R. I. & P. R. Co.* v. *Cronin* involves repairs to an engine which had been and thereafter was used in interstate commerce. On the meager facts found in the opinion this case would seem to be decided contrary to the decisions in *Peters* v. *Ind. Co.,* and *Oglesby* v. *St. Louis-San Francisco R. Co.,* supra. In *Ruck* v. *Chicago, M. & St. P. R. Co.,* supra, an employee injured while repairing a boiler, part of the equipment of a wrecking train, to make it ready for either interstate or intrastate use, was held not be employed in interstate commerce. In *Kozimko* v. *Hines,* supra, the employee was repairing a crane for unloading coal into a coal bin for the use of locomotives in interstate commerce. This decision of the federal court would not be pursuasive in face of the decision of the United States Supreme Court in *Erie R. R. Co.* v. *Szary,* supra. The cases of *Pierson* v. *New*

*York, S. & W. R. Co.*, supra, and *Ruck* v. *Chicago, M. & St. P. R. Co.*, supra, lean largely on the decision of the Circuit Court of Appeals in the case of *Pedersen* v. *Delaware, Lackawanna & W. R. Co.*, 197 F. 537, which case was reversed by the Supreme Court of the United States in *Pedersen* v. *Delaware, Lackawanna & W. R. Co..* 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153. There is a clear distinction between the hauling of coal, water, ties, or rails, or the quarrying of rock to be thereafter used in some interstate commerce, and the repairing or conditioning of an instrumentality already committed to interstate commerce.

The work in which Steward was engaged bore a direct and important relation to interstate commerce. The operation of a block signal was necessary for the proper and safe movement of such commerce. These signals could not operate without batteries which had to be kept in charged condition. The care of batteries, the taking of them from the block signal system, the recharging of them, the replacing of them in the block signal system, are all part of one system of operation. Each movement is closely related to the efficient operation of the entire block signal system. The batteries were definitely and permanently assigned to a use in interstate commerce, were instrumentalities of that commerce, and any work done on them in the way of repairing or supplying them for such use was work done in interstate commerce.

The order of the Industrial Commission of Utah denying compensation is affirmed.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.